Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Facsimile: 415-956-1008

[Additional attorneys listed on signature page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MANAN BHATT, LISA RUH, SUNIL AMIN, and TRUSHAR PATEL, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC<br><br>Defendant. | **Case No. 16-3171**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California Consumer Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Express Warranty – Magnuson-Moss Warranty Act<br>(5)  Breach of Implied Warranty<br>(6)  Breach of Implied Warranty – Magnuson-Moss Warranty Act<br>(7)  Violations of Georgia Fair Business Practices Act<br>(8)  Violations of Uniform Deceptive Trade Practices Act<br>(9)  Breach of Implied Warranty of Merchantability<br>(10) Fraud by Concealment<br>(11) Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.     Plaintiffs Manan Bhatt, Lisa Ruh, Sunil Amin, and Trushar Patel bring this action for themselves and on behalf of all persons in the United States who purchased or leased certain vehicles equipped with uniform and uniformly defective HVAC Systems manufactured, distributed, and/or sold by Mercedes-Benz USA, LLC, and/or its related subsidiaries or affiliates ("Mercedes"), as described below.

2.     The vehicles at issue in this action include the 2008-2016 Mercedes C-Class, 2013-2016 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2016 Mercedes CLS-Class, 2003-2016 Mercedes E-Class, 2007-2016 Mercedes GL-Class, 2010-2016 Mercedes GLK-Class, 2006-2016 Mercedes M-Class, 2006-2015 Mercedes R-Class, 2006-2016 Mercedes S-Class, 2003-2012 Mercedes SL-Class, and 2004-2010 Mercedes SLK-Class (the "Class Vehicles").

3.     This action is brought to remedy violations of law in connection with Mercedes's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. These Class Vehicles' heating, ventilating, and air conditioning systems ("HVAC Systems") have a serious design defect that causes the HVAC Systems to (a) accumulate mold and mildew residue or growth within the HVAC System; (b) emit a moldy or mildewy odor that permeates the vehicle cabin when the HVAC system is activated; and (c) cause the Vehicle's passenger cabin to be unbearable and thus unusable for its intended purpose.

4.     On information and belief, the HVAC System is substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the HVAC Systems in all Class Vehicles are made up of substantially the same components [evaporator, evaporator housing, ducting, fan, filter, drain lines, etc.], and all employ the same general mechanism to deliver ventilation, heating, and cooling to the passenger cabin.

5.     Because of its faulty design, during normal and expected conditions the HVAC System fails to properly evaporate or drain the condensation that accumulates within the system, creating a moist, hospitable environment for the growth of bacteria, fungus, mold, and spores, which then are blown into the passenger cabin when the HVAC system is in use (the "HVAC System Defect"). The mold-carrying air has a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

6.     The moldy, smelly air emitted by the HVAC System Defect is not a one-time event in the Class Vehicles – Class Members report it occurs every time the HVAC System is turned on, and is especially pervasive in humid weather or after it has rained.

7.     When Plaintiffs and Class Members complain to Mercedes about the HVAC System Defect, Mercedes's only "solutions" are replacement of the cabin air filter or "flushing the system"[1], both of which are temporary and do not address the original defective HVAC System design, and thus are not permanent fixes for the Defect. What is worse, Mercedes made Class Members pay out of pocket for these nonpermanent "fixes" for the HVAC System Defect even if Class Members' vehicle remained under warranty at the time.

8.     The HVAC System Defect inhibits Class Members' proper and comfortable use of their vehicles' air conditioning, and requires Class Members to pay for repeated replacements of the cabin air filter and/or "flushing" of the HVAC System.

9.     On information and belief, prior to the manufacture and sale of the vehicles at issue, Mercedes knew of the HVAC System Defect through sources such as repair data; replacement part sales data; early consumer complaints made

---

[1] "Flushing the system" consists of partially disassembling the dashboard and drilling a hole into the HVAC System and applying a disinfecting solution to the evaporator coil.

directly to Mercedes, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes dealers; and other internal sources. Yet despite this knowledge, Mercedes failed to disclose and actively concealed the HVAC System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as "sophisticated," "comfortable," and "state-of-the-art" vehicles, which they are not.

10.   Mercedes knew or should have known that the "fix" it charged Class Members for to "remedy" the HVAC System Defect – replacing the cabin air filter or "flushing the system" – is not a permanent solution for the Defect.

11.   Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the costs of its temporary "fixes" of filter replacement and "flushing the system".

12.   As a result of Mercedes's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the HVAC System Defect, Mercedes has not provided a permanent remedy for this Defect. Furthermore, Plaintiffs and Class Members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC System Defect.

## PARTIES

### *Plaintiff Manan Bhatt*

13.   Plaintiff Manan Bhatt resides in Torrance, California.

14.   Mr. Bhatt owns a 2010 Mercedes C300W Sports Sedan, which he purchased on August 25, 2013, as a Mercedes Certified Pre-Owned vehicle from Alfano Motorcars Inc. in San Luis Obispo, California. Mr. Bhatt's Class Vehicle

1  was manufactured, sold, distributed, advertised, marketed, and warranted by

2  Mercedes, and bears the Vehicle Identification No. WDDGF5EBOAF366596.

3      15.  Mr. Bhatt purchased his Class Vehicle for his personal, family,

4  and household use.

5      16.  Before purchasing the vehicle, Mr. Bhatt reviewed the vehicle's

6  ownership history and reported structural and equipment damage through the

7  website carfax.com. The report indicated no issues or reported recalls.

8      17.  Mr. Bhatt purchased a Certified Pre Owned warranty from

9  Mercedes for $2295.00. Mr. Bhatt's vehicle remained under warranty throughout

10  the relevant period described herein during which Mercedes refused to permanently

11  repair or replace his defective HVAC System.

12      18.  Mr. Bhatt experienced a noxious odor caused by the HVAC

13  System Defect less than a week after he purchased the vehicle.

14      19.  After the incident, Mr. Bhatt notified his selling dealer, Alfano

15  Motorcars, by phone about the foul moldy smell. The selling dealer suggested that

16  Mr. Bhatt take the car to a local Mercedes-Benz dealer since Alfano Motorcars is

17  approximately 200 miles from Mr. Bhatt's residence. Mr. Bhatt called the

18  Mercedes-Benz dealer, Mercedes-Benz of South Bay, in Torrance, CA and

19  explained the problem. The dealer told Mr. Bhatt that any repair of the HVAC

20  System would not be covered by warranty until the Vehicle was eligible for its first

21  service under warranty, which was in May 2014, approximately one year later.

22      20.  From approximately a week after his purchase when the smell

23  originated to his first service visit in May 2014, some eight months later, Mr. Bhatt

24  dealt with constantly foul and unpleasant odors in his newly acquired Class

25  Vehicle. In an attempt to make the passenger cabin bearable so as to be able to

26  drive and utilize his vehicle, Mr. Bhatt would air out the vehicle prior to driving it

27  by opening its windows, purchased and sprayed air freshener at a cost of

28  approximately $20.00, into the vehicle each time he entered it.

21.    In May 2014, Mr. Bhatt took the vehicle to Mercedes-Benz of South Bay in Torrance, California.

22.    Mr. Bhatt explained the continuing smell to the Mercedes-Benz dealer who proceeded to replace the cabin air filter at a cost of approximately $56.75 plus labor to Mr. Bhatt. Although Mr. Bhatt reasonably believed that the repair would be covered under the warranty he purchased, the Mercedes dealer claimed that it needed replacing due to "wear and tear" that exceeded the warranty. Mr. Bhatt disputed the dealer's claim that he had in any way contributed to or caused the odor, but the dealer offered Mr. Bhatt no other means of alleviating the foul odor.

23.    Mr. Bhatt was advised to turn off the Air Conditioner prior to arrival to his destination to try to eradicate the odor, which he did.

24.    The moldy odor disappeared after the service visit but returned in December 2014.

25.    Mr. Bhatt again complained of the smell to Mercedes-Benz of South Bay. The dealer offered Mr. Bhatt two temporary "fixes" for the problem at Mr. Bhatt's expense: (1) replace the air cabin filter again for approximately $58 in parts or (2) perform a complete "flush" of the HVAC System for approximately $360 in parts and labor.

26.    As Mr. Bhatt's parents were visiting from India the next week, he felt he had no choice but to accept another temporary "fix" and therefore chose to have the cabin air filter replaced at a cost of $57.65 plus tax to him.

27.    In February 2015, Mr. Bhatt lodged an official complaint about the foul moldy smell while he was at Mercedes-Benz of South Bay. A Mercedes-Benz representative called Mr. Bhatt to discuss the complaint within two weeks of the date of his last service. The representative explained to Mr. Bhatt that Mercedes cannot provide the replacement cabin air filter for free because, "There is no official recall for this part from Mercedes-Benz manufacturing location.

1   Unfortunately, we cannot provide you with the free parts or labor". However, as a
2   good faith gesture the representative added a complimentary cabin air filter
3   replacement to Mr. Bhatt's account so that Mr. Bhatt would not be charged for the
4   replacement when the moldy odor returns. The representative claimed that the
5   warranty did not cover Mr. Bhatt's previous cabin air filter replacements because
6   the replacements were needed due to excessive "wear and tear" caused by Mr.
7   Bhatt.

8          28.    On or about February 6, 2016, Mr. Bhatt had his cabin filter
9   changed by Mercedes-Benz of South Bay due to severe foul odor which was
10  covered by a "one time good[will] gesture."

11         29.    Approximately one month after this filter change in Mr. Bhatt's
12  Class Vehicle, the foul odor returned.

13         30.    To date, Mr. Bhatt has paid approximately $194.47 out of
14  pocket for temporary "fixes" for the HVAC System Defect.

15         31.    Mr. Bhatt expected his Class Vehicle to be of good and
16  merchantable quality and not defective. He had no reason to know of, or expect,
17  that mold would develop in his vehicle's HVAC System, nor was he aware from
18  any source prior to purchase of the unexpected, extraordinary, and costly
19  maintenance steps Mercedes suggests are necessary to prevent its development.
20  Had he known these facts, he would not have bought his Class Vehicle or would
21  have paid less for it.

22         32.    Mr. Bhatt regularly saw advertisements for Mercedes vehicles
23  on television, in magazines, on billboards, in brochures at the dealership, and on the
24  Internet during the years before he purchased his Mercedes C300W Sports Sedan in
25  2013. Although he does not recall the specifics of the many Mercedes
26  advertisements he saw before he purchased his Class Vehicle, he does recall that
27  state-of-the-art engineering and a comfortable interior were frequent themes across
28  the advertisements he saw. Those advertisements about state-of-the-art engineering

and a comfortable interior influenced his decision to purchase his vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Bhatt that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC system and/or air filtration system, he would not have purchased his Class Vehicle, or would not have purchased it at the price paid.

*Plaintiff Lisa Ruh*

33.     Plaintiff Lisa Ruh resides in San Diego, California.

34.     Ms. Ruh owns a 2011 Mercedes C300W Sports Sedan, which she purchased on September 10, 2011, as a Mercedes Certified Pre-Owned vehicle from Mercedes Benz of Laguna Niguel.

35.     Ms. Ruh's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDGF5EB7BA461719.

36.     Ms. Ruh purchased her Class Vehicle for her personal, family, and household use.

37.     Ms. Ruh expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know of, or expect, that mold would develop in her vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent its development. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

38.     Ms. Ruh purchased her Class Vehicle as a Certified Pre Owned vehicle which provides Certified Pre Owned Warranty coverage past the new vehicle warranty. A further Certified Pre Owned Extended Warranty was added onto the vehicle. Ms. Ruh's Class Vehicle remained under warranty throughout the

1  relevant period described herein during which Mercedes refused to permanently

2  repair or replace her defective HVAC system.

3          39.     Ms. Ruh experienced a noxious odor caused by the HVAC

4  System Defect in approximately summer 2014.

5          40.     On or about October 9, 2014, Ms. Ruh complained to her

6  service advisor at Mercedes-Benz of San Diego in San Diego, CA about a very

7  strong toxic smell coming from the vehicle each time the HVAC system is turned

8  on. The service advisor indicated that they did not notice nor could they detect an

9  abnormal odor. The advisor also stated that until they were able to corroborate the

10  odor, that there wasn't anything that they could do about it.

11          41.     Shortly thereafter, Ms. Ruh had to contact Mercedes On-Site

12  Service to have her Class Vehicle towed to the dealer because it would not start.

13  She notified the on-site technician about a steadily increasing foul moldy smell

14  when the HVAC was in use and how the dealership had dismissed the concern. She

15  asked if he could validate the presence of a foul odor and he concurred that an odd

16  odor was present. He suggested and proceeded to spray Febreze at the base of the

17  windshield to try and remedy the odor. After the vehicle was towed to the

18  dealership, Ms. Ruh further complained of a smell to which the service advisor

19  advised that they still did not notice any odd smell. The odor remained.

20          42.     On or about June 25, 2015, Ms. Ruh again complained of the

21  odor to her service her advisor at Mercedes-Benz of San Diego and explained that

22  the toxic odor had gotten considerably worse and was making her nauseous, giving

23  her headaches, making her cough, and affecting her well-being, especially because

24  she has an underlying autoimmune disease. The dealer told Ms. Ruh that a filter and

25  disinfecting solution would be necessary and not covered by warranty. Ms. Ruh

26  reasonably believed the repairs would be covered by her warranty and requested

27  same but was denied. Ms. Ruh was advised the vehicle was not defective. Facing

28  no reasonable alternative, Ms. Ruh was charged and paid $152.48 plus tax for a

1    filter, disinfectant, and labor – all for what was only a temporary "fix". The smell

2    quickly returned less than a week later.

3              43.    In order to try to mitigate the smell, Ms. Ruh avoided running

4    the air conditioner until and unless it was absolutely unbearable to go without it.

5              44.    Ms. Ruh continued to experience breathing/coughing issues and

6    an immediate sense of light headedness/nausea with the use of the HVAC system.

7    During long drives, she would experience runny nose and headaches. To mitigate

8    this, she would avoid the use of her HVAC system despite the heat experienced in

9    San Diego. She also received comments from friends while riding in her vehicle

10   that there was indeed a very disturbing odor with the use of the HVAC system.

11             45.    On or about February 15, 2016, Ms. Ruh brought in her vehicle

12   to Mercedes-Benz of Escondido for continued foul odor smells coming from the

13   vehicle and other complaints. The dealer performed an evaporator clean and

14   installed a new air filter at no charge to her under a "goodwill" policy.

15             46.    The smell returned on or about March 4, 2016, some eighteen

16   days after the treatment was conducted.

17             47.    To date, Ms. Ruh has paid $163.88 out of pocket for temporary

18   "fixes" for the HVAC System Defect.

19             48.    Ms. Ruh regularly saw advertisements for Mercedes vehicles on

20   television, in magazines, on billboards, in brochures at the dealership, and on the

21   Internet during the years before she purchased her Mercedes C300W Sports Sedan

22   in 2011. Although she does not recall the specifics of the many Mercedes

23   advertisements she saw before she purchased her Sports Sedan, she does recall that

24   state-of-the-art engineering and a comfortable interior were frequent themes across

25   the advertisements she saw. Those advertisements about state-of-the-art engineering

26   and a comfortable interior influenced her decision to purchase her vehicle. Had

27   those advertisements or any other Mercedes materials disclosed to Ms. Ruh that the

28   Class Vehicles had defective HVAC Systems, or that she would have to pay for

1   repairs/replacement of the HVAC system and/or air filtration system, she would not

2   have purchased her Class Vehicle, or would not have purchased it at the price paid.

3          *Plaintiff Sunil Amin*

4          49.    Plaintiff Sunil Amin resides in Atlanta, Georgia.

5          50.    Mr. Amin owns a 2013 Mercedes C250 Coupe, which he

6   purchased new on November 10, 2012, from RBM of Atlanta North in Alpharetta,

7   Georgia.

8          51.    Mr. Amin's Class Vehicle was manufactured, sold, distributed,

9   advertised, marketed, and warranted by Mercedes, and bears the Vehicle

10  Identification No. WDDGJ4HB0DF966835.

11         52.    Mr. Amin purchased the Class Vehicle for his personal, family,

12  and household use.

13         53.    Mr. Amin expected his Class Vehicle to be of good and

14  merchantable quality and not defective. He had no reason to know of, or expect,

15  that mold would develop in his vehicle's HVAC System, nor was he aware from

16  any source prior to purchase of the unexpected, extraordinary, and costly

17  maintenance steps Mercedes suggests are necessary to prevent its development.

18  Had he known these facts, he would not have bought his Class Vehicle or would

19  have paid less for it.

20         54.    Mr. Amin first experienced a noxious odor caused by the HVAC

21  System in approximately January of 2014.

22         55.    Since that time, the noxious odor has continued unabated. The

23  HVAC system emits the odor when the vehicle's climate control system is first

24  engaged and generally persists.

25         56.    The strength of the odor intensifies after any periods of rain.

26         57.    Mr. Amin regularly saw seen advertisements for Mercedes

27  vehicles on television, in magazines, on billboards, in brochures at the dealership,

28  and on the Internet during the years before he purchased his Mercedes C250 Sports

1   Coupe in 2012. Although he does not recall the specifics of the many Mercedes

2   advertisements he saw before he purchased his Sports Coupe, he does recall that

3   state-of-the-art engineering and a comfortable interior were frequent themes across

4   the advertisements he saw. Those advertisements about state-of-the-art engineering

5   and a comfortable interior influenced his decision to purchase his vehicle. Had

6   those advertisements or any other Mercedes materials disclosed to Mr. Amin that

7   the Class Vehicles had defective HVAC Systems, or that he would have to pay for

8   repairs/replacement of the HVAC system and/or air filtration system, he would not

9   have purchased his Class Vehicle, or would not have purchased it at the price paid.

10          58.     On January 29, 2016 Mr. Amin, through counsel, sent Mercedes

11   a letter sent pursuant to the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-

12   390, et. seq., requesting relief and repair of the defects exhibited in Class Vehicles

13   for Mr. Amin and others similarly situated; to which Mercedes responded through

14   counsel denying the existence of any defect, failing to offer to repair Mr. Amin or

15   anyone else's vehicles, failing to compensate out-of-pocket expenses for those who

16   have incurred them, and failing to guarantee to honor claims for this defect going

17   forward, and only offering a small sum to resolve his claim alone. Further,

18   Mercedes alleges the complained of problems to be "a maintenance issue"

19   presumably implying that all purchasers who have experienced foul odors have

20   failed to properly maintain their Class Vehicles. Mr. Amin found this response from

21   Mercedes to be an unsatisfactory response to his request for relief.

22          *Plaintiff Trushar Patel*

23          59.     Plaintiff Trushar Patel resides in Johns Creek, Georgia.

24          60.     Dr. Patel owns a 2014 Mercedes E350 Sedan, which he

25   purchased new on January 16, 2015, from Mercedes-Benz of Buckhead in Atlanta,

26   Georgia, along with a Mercedes Pre-Paid Service Plan.

27

28

61.     Dr. Patel's Class Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDDHF5KBXEA997500.

62.     Dr. Patel purchased the Class Vehicle for his personal, family, and household use.

63.     Dr. Patel expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know of, or expect, that mold would develop in his vehicle's HVAC System, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent its development. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

64.     Dr. Patel first experienced a noxious, pungent, sour, musty odor caused by the HVAC System in approximately March or April 2015.

65.     Since that time, the noxious odor has continued unabated. The HVAC system emits the odor when the vehicle's climate control system is first engaged and generally persists.

66.     The strength of the odor intensifies after any periods of rain.

67.     At its very first service "Service A", Dr. Patel explained the problem of a smell that is quite often "ripe" to his service advisor at Mercedes-Benz of Buckhead. Although Dr. Patel reasonably believed that the repair would be covered under the warranty and/or his prepaid service plan, the authorized Mercedes dealer claimed that the filter needed replacing at a cost of $185 to Dr. Patel. When Dr. Patel inquired as to why the filter needed replacement so soon, he was advised that the filter required replacement every year. Dr. Patel explained that the vehicle was only purchased and in use since January and shouldn't require a filter that soon. The service advisor told Dr. Patel that the remedy was not covered

1   by his prepaid service or warranty and that the filter would only be replaced in the

2   next service "Service B."

3        68.    Prior to this purchase, Dr. Patel had previously purchased and

4   owned Mercedes vehicles but did not experience any odor issues with those

5   vehicles.

6        69.    Prior to this purchase, Dr. Patel was not advised of the Defect

7   and tendency, known by Mercedes, of his new vehicle to emit noxious odors prior

8   to purchasing it. He relied upon Mercedes' assertions of the capabilities and

9   comfort of his new vehicle via salesmen and brochures and ads. He also reasonably

10  expected that Mercedes would stand behind its products and claims for warranty

11  benefits by a long-time and repeat customer – especially when the problem/defect

12  manifested within a few months of a new vehicle's purchase. Dr. Patel reasonably

13  expected to receive a vehicle with state-of-the-art engineering and a comfortable

14  interior. Advertisements about state-of-the-art engineering and a comfortable

15  interior, recommendations and personal experience with his Mercedes dealer

16  influenced his decision to purchase his vehicle. Had those advertisements or any

17  other Mercedes materials or personnel disclosed to Dr. Patel the nature of the defect

18  in the Class Vehicle's HVAC Systems, or that he would have to pay for

19  repairs/replacement of the HVAC system and/or air filtration system, he would not

20  have purchased his Class Vehicle, or would not have purchased it at the price paid.

21       70.    For further peace-of-mind with his new purchase, Dr. Patel

22  purchased an additional Mercedes Pre-Paid Service Plan with his vehicle. He

23  expected piece-of-mind and protection against surprise billings or expenses. The

24  Plan documents stated "you don't have to worry about any unexpected bills. This

25  frees you from additional workshop costs as unexpected repairs, maintenance or

26  wear parts are already covered, depending on the specific service contract*. You

27  therefore don't have to worry about workshop bills and your Mercedes remains in

28  top condition. With the service contract you will always receive Mercedes-

Benz quality – with the service of our qualified workshop specialists and Mercedes-Benz Genuine Parts."

71. Because of the foul odors, Dr. Patel's enjoyment and use of the vehicle were and are curtailed. He is forced to leave his windows open to vent the vehicle whenever reasonably possible. He avoids parking in open areas where rain could fall on the vehicle and exacerbate the odors. He unsuccessfully attempted to mitigate the odors by adjusting HVAC settings to try and find an acceptable level that would not release odors. Dr. Patel purchased and installed air fresheners at an estimated cost of $25.00 to attempt to mask the smell. He and his family were forced to endure unpleasant smells in a brand new vehicle almost from the onset of its use.

### *Defendant Mercedes-Benz*

72. Defendant MERCEDES-BENZ is a Delaware corporation with its principal place of business in Montvale, NJ.

73. At all times relevant herein, MERCEDES-BENZ engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States.

### **JURISDICTION**

74. This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other Class Members are citizens of a different state than Defendant.

75. This Court has personal jurisdiction over Mercedes because Mercedes is authorized to do business in California, Mercedes conducts substantial business in this District, some of the actions giving rise to the complaint took place in this District, Mercedes has minimum contacts with California, and/or Mercedes

1  otherwise intentionally avails itself of the markets in California through the
2  promotion, marketing, and sale of its products in California, each of which are
3  sufficient bases to render the exercise of jurisdiction by this Court permissible
4  under traditional notions of fair play and substantial justice. This Court also has
5  personal jurisdiction over Mercedes under 18 U.S.C. § 1965 because Mercedes is
6  found in, has an agent in, or transacts business in this District.

7  **VENUE**

8  76.  Venue is proper in this District under 28 U.S.C. § 1391 because
9  Mercedes, as a corporation, is deemed to reside in any judicial district in which it is
10  subject to personal jurisdiction. Additionally, Mercedes transacts business within
11  the District, and some of the events establishing the claims arose in this District.

12  77.  Plaintiffs' venue declarations pursuant to Cal. Civ. Code
13  § 1780(d) are attached hereto as Exhibits A and B.

14  **APPLICABLE LAW**

15  78.  Plaintiffs, who assert their claims against MERCEDES-BENZ, a
16  New Jersey Corporation, seek damages and equitable relief on behalf of themselves
17  and all other persons and entities similarly situated, under the laws of California
18  and/or Georgia and/or New Jersey, or under the law of all states that are
19  substantially similar.

20  79.  California has a materially greater interest than any other State
21  in enforcing the rights and remedies granted to consumers under the California laws
22  invoked in this Complaint. These rights and remedies further strong fundamental
23  public policies of the State of California.

24  80.  As an alternative to the application of California law to a
25  nationwide class, for those Class members who reside in states whose laws do not
26  materially conflict with California law with respect to the claims and facts alleged
27  here, the Court can and should apply California law to those Class members'
28  claims.

**FACTUAL ALLEGATIONS**

81. Plaintiffs bring this action for themselves and on behalf of all Class Members. Plaintiffs are informed and believe that, because of the HVAC System Defect, the HVAC Systems in the Class Vehicles are predisposed to produce a moldy odor under normal use conditions that would not cause non-defective HVAC Systems to produce a moldy odor, compromising the comfort and enjoyment of vehicle occupants, including Class Members, and requiring them to pay for repeated nonpermanent "fixes" including replacements of the cabin air filter and "flushing the system" with disinfectant spray.

82. The diagram below illustrates the components and functioning of the HVAC systems:



| 1 | Dust filter | D | Blended air |
|---|---|---|---|
| 3 | Evaporator | M2/5 | Fresh air/recirculated air flaps actuator motor |
| 4 | Heater core | M2/6 | Left blended air flap actuator |
| A | Fresh air or recirculated air | M2/7 | Right blended air flap actuator |
| A32m1 | Blower motor | M2/15 | Left and right foot well flaps actuator |
| B | Cooled air | M2/16 | Left and right defroster flaps actuator |
| C | Heated air | M2/21 | Fresh air flaps actuator |

83.     As a vehicle's HVAC system cools air, condensation forms on a component called an evaporator (labeled 3 in the diagram above). In a non-defective system, this condensation is evaporated through the activation of a fan and airflow over the evaporator.

84.     On information and belief, condensation that builds on the evaporator and elsewhere within the Class Vehicles' HVAC systems is never properly and fully evaporated. This residual moisture provides a haven for the growth of mold and mildew as spores enter the system through outside vents.

85.     Based on preliminary investigation and inspection, due to the Defect, several mold species, including Aspergillus/Pencillium, Ascospores, and Smut/Periconia/Myxomy, are present in the evaporator of Class Vehicles. Said molds are known to secrete mycotoxins such as Patulin, creating and contributing to the foul odors experienced by Plaintiffs and Class Members.

86.     Mycotoxins are toxic to human and animals and known to cause some or all of the following: allergic reactions, infections, cellular damage, DNA damage, interference with RNA synthesis, inflammation, gastroenteritis, and other harmful effects.

87.     Mercedes knew or should have known that having a damp, poorly draining, component which could promote the growth of mold, could result in or at least promote, reactions, diseases, symptoms, or complications in passengers of Class Vehicles, presenting a risk to their health and safety, especially when the growth is in the airway to a tightly sealed and enclosed space containing one or more human beings and animals.

88.     Over time, the mold/mildew/fungus growing in the evaporator can spread, resulting in reduced HVAC System efficiency, while also becoming more difficult to remove and requiring evaporator replacement in some instances.

89.     Moreover, the tightly sealed and enclosed passenger compartment could cause concentration levels of toxic smells and chemicals to become much higher than in larger and less tightly sealed spaces.

90.     Replacing the filter is not a fix for the Defect because the filter is "upstream" from the evaporator.

91.     The Class Vehicles at issue in this action include the 2008-2016 Mercedes C-Class, 2013-2016 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2016 Mercedes CLS-Class, 2003-2016 Mercedes E-Class, 2007-2016 Mercedes GL-Class, 2010-2016 Mercedes GLK-Class, 2006-2016 Mercedes M-Class, 2006-2015 Mercedes R-Class, 2006-2016 Mercedes S-Class, 2003-2012 Mercedes SL-Class, and 2004-2010 Mercedes SLK-Class (the "Class Vehicles").[2]

92.     Plaintiffs reserve the right to amend the definition of "Class Vehicles," should further discovery reveal that additional models and model-years are affected by the HVAC System Defect.

A.     **Mercedes Knew of the HVAC System Defect Prior to Sale or Lease of the Class Vehicles**

93.     On information and belief, Mercedes learned of the HVAC System Defect at least as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through sources such as arbitration actions; repair data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

---

[2] Discovery will enable Plaintiffs to more precisely determine which model-years share the same defective HVAC System design.

**B.**   **Mercedes Was Directly Made Aware of the Defect Via a Successful Consumer Arbitration Action Brought Against It**

94.   Mercedes learned of the HVAC System Defect at least as early as 2008, when a Class Vehicle owner brought – and won – a consumer arbitration action against Mercedes for the Defect.

95.   The following is a synopsis of the Florida Consumer Complaint and Arbitration decision rendered against Mercedes in *Fattah v. Mercedes-Benz USA, Inc.*, 2008-0441/MIA (Fla. NMVAB November 14, 2008):

> The Consumer complained of a foul musty odor coming from the air conditioner vents in her 2007 Mercedes C230. The Consumer testified that the severity of the odor had reduced; however, the odor still existed. The Manufacturer contended that the alleged defect did not substantially impair the use, value or safety of the vehicle. While not denying the existence of the odor, the Manufacturer asserted that outside elements and humid South Florida temperatures contributed to the odor. The Board rejected the Manufacturer's argument and found that the odor substantially impaired the use, value and safety of the vehicle. Accordingly, the Consumer was awarded a refund.[3]

96.   During the arbitration hearing, Mercedes was represented by counsel, a Mercedes-Benz USA representative out of the Montvale, NJ, headquarters, a Mercedes-Benz USA Technical Specialist for the South Florida region, and the Service Manager at the dealership the consumer had visited complaining about the odor.

97.   Mercedes described the HVAC Defect during the hearing: "The system works in such a way that it will – the AC is supposed to get rid of all the humidity from the air, ok? And in some cases, you know, where you shut the car off, some water will remain in the evaporator … what happens is it will accumulate

---

[3] Office of the Florida Attorney General, Florida New Motor Vehicle Arbitration Board Quarterly Case Summary for 4th Quarter (October 2008 - December 2008), *available at* http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7SAJZG/$file/Oct-Dec08.pdf.

there. It will not fully drain." Mercedes went on to say that the water that accumulates is what ultimately leads to the moldy odor.

98.     Under questioning from the Arbitration Board, Mercedes admitted that as long as the consumer keeps the car, she's going to have to keep getting Mercedes temporary "fix", which one Board member called "a band-aid."

99.     During deliberation, the Board found:

> The issue with the vehicle is that it's got a musty smell, Mercedes knows about it, they have a technical service bulletin to address it, so apparently they've had enough complaints on this where it rose to the level of having to deal with it.  The way they deal with it is they use the disinfectant to clean, and if you read the TSB, you've got to get in there and make sure you clean the whole evaporator as much as possible … Mercedes has admitted that, yeah, there is a problem, that this is the best they know how to fix it. … So nothing that they've done has made the smell completely disappear.
> …
>
> You know, that's one way to look at it in terms of how strong the odor is.  Another way to look at it is that the cure doesn't work.  And this is going to be with her and the vehicle for as long as she has the vehicle.  That's the way it looks, because she's coming back in and that's why I was questioning him, because I wanted to see if they found the problem and here's the solution to the problem.  There is no real solution.  In other words, they haven't come up with anything to say, I mean, change this and there's not going to be anymore accumulation of water and, in fact, in other models, from what he's saying, they don't have that problem because whatever the engineering is, it prevents it.  And on this model, it's not there.  So, you know, it's sort of like a defect, which they are trying to deal with, and they can't really deal with it in all the cases.
> …
>
> there's really not a fix for the vehicle.  And there shouldn't be a smell to the vehicle.  This is a vehicle that, to me, the fact that the smell persists is substantial in itself.  I think that this is a substantial problem that this vehicle has with this smell.  It's not going to go away.  There's nothing you can do that's going to say we're going to eliminate the smell in this car.  It's just not gonna happen.  There's no

remedy to get rid of the smell, period.  We're going to do this and it's
going to fix it.  And I have a problem with that. … it's just a design
problem issue

100.   Mercedes knew or should have known of the HVAC Defect
from at least as early as this arbitration hearing in 2008.

**C.    Mercedes's Knowledge of the HVAC System Defect from Dealer
Technical Bulletins**

101.   Mercedes's knowledge of the HVAC System Defect is
demonstrated by Dealer Technical Bulletins issued by Mercedes concerning the
Defect.

102.   Upon information and belief, Mercedes issued Dealer Technical
Bulletins to its dealerships and service centers describing the HVAC System Defect
(or the moldy smell consumers were complaining about) and informing service
technicians of the temporary "fix" Mercedes was offering.

**D.    Mercedes's Knowledge of the HVAC System Defect from Repair
Data**

103.   Mercedes also knew or should have known about the HVAC
System Defect because of the large number of HVAC System repairs and Cabin Air
Filter replacements made during the Class Vehicles' warranty periods.

104.   Upon information and belief, Mercedes collects, reviews, and
analyzes detailed information about repairs made on vehicles still under warranty at
its dealerships and service centers, including the type and frequency of such
repairs.[4] Complete data on such repairs is exclusively within Mercedes's control
and unavailable to Plaintiffs without discovery.

---

[4] For example, in the *Fattah* arbitration hearing, Mercedes-Benz counsel testified
that Mercedes received a "motor vehicle defect notification" after at least three
repairs for the HVAC System odor.

**E.     Mercedes's Knowledge of the HVAC System Defect Gathered from the Large Number of Replacement Cabin Air Filters Ordered from Mercedes**

105.   Upon information and belief, Mercedes also knew or should have known about the HVAC System Defect because of the higher than expected number of replacement cabin air filters ordered from Mercedes, which should have alerted Mercedes that this was a Defect affecting a wide range of its vehicles.

106.   Upon information and belief, Mercedes service centers use Mercedes replacement parts that they order directly from Mercedes. Therefore Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement Cabin Air Filters. The ongoing high sales of replacement cabin air filters was (or should have been) known to Mercedes, and alerted Mercedes that its HVAC Systems were defective and causing Class Vehicles' Air Conditioning systems to emit moldy odors frequently and consistently.

**F.     Mercedes's Knowledge of the HVAC System Defect Gained From Class Member Complaints Made Directly To Mercedes**

107.   Mercedes also knew or should have known about the HVAC System Defect because numerous consumer complaints regarding failures of the HVAC System were made directly to Mercedes. The large number of complaints, and the consistency of their descriptions of the HVAC System Defect and the mold formation and foul, noxious odors it caused in the Class Vehicles, alerted Mercedes to this serious defect affecting a wide range of its vehicles.

108.   The full universe of complaints made directly to Mercedes about the HVAC System Defect is information presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the repeated HVAC System failures their vehicles experienced. For example, some instances of these direct-to-

Mercedes complaints are described in Class Vehicle owners' complaints logged with NHTSA ODI and posted on online vehicle owner forums:

- "MY CAR SMELLS LIKE MILDEW AND MOLDY. I HAVE TAKEN IT TO THE DEALER ABOUT 3 TIMES ABOUT THIS SITUATION. I HAVE RESPIRATORY PROBLEMS AND ALLERGIES AND I CAN HARDLY USED THIS CAR, IT STINKS AND BOTHERS MY BREATHING" Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

- Took my 09 C300 in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" http://www.benzworld.org/forums/ (posted on March 2011)

- "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser …. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." peachparts.com (posted April 2007).

109.   As the above sampling of complaints shows, Class Members have been vocal in complaining directly to Mercedes about the HVAC System Defect, and the number and consistency of their complaints should have alerted Mercedes about the HVAC System Defect.

**G.   Mercedes's Knowledge of the HVAC System Defect From Class Member Complaints Collected by NHTSA's Office of Defect Investigations**

110.   In addition to complaints made directly to Mercedes, many Class Vehicle owners lodged complaints about the HVAC System Defect with

NHTSA's Office of Defect Investigations ("NHTSA ODI"), beginning as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

111.   Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

112.   Thus automakers should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including design-related defects, such as failures of HVAC Systems to filter and emit mold- and odor-free air as intended.

113.   From its monitoring of the NHTSA databases, Mercedes knew or should have known of the many complaints about HVAC System failure logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Mercedes to the HVAC System Defect.

114.   NHTSA's publicly available ODI database contains only complaints made in the past five years on its website; thus complaints made before 2008 are not readily accessible. Mercedes, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery. A sampling of the publicly available complaints lodged with NHTSA ODI, however, includes those quoted in paragraph ¶¶ 108, as well as the following:

• "MOLDS AND MILDEW BUILD UP IN THE AIR CONDITION DUCTS PLACING PEOPLE WHO ARE SUSCEPTIBLE FOR INFECTION (PEOPLE WITH WEAK IMMUNE SYSTEM) AT RISK FOR FATAL INFECTION. THE DEALER STATED THAT THIS IS A KNOWN AND COMMON CONDITION

FOR THIS CAR BECAUSE THE AC BOX DOES NOT DRAIN THE

CONDENSED WATER. THIS IS BECAUSE THE WAY THE CAR WAS

DESIGNED. THE DEALER RECOMMENDED TURNING OFF THE AC FOR

30 SECONDS WHILE KEEPING JUST THE FAN ON EVERY TIME BEFORE

TURNING OFF THE CAR TO DRY UP THE CONDENSED WATER ON THE

AC COILS, NOT PRACTICAL. THE DEALER HAS A KNOWN SERVICE TO

DISINFECT THE AC SYSTEM BUT BECAUSE OF THE CAR DESIGN

COULD NOT GUARANTEE THAT THE CONDITION WILL NOT RETURN.

THERE IS NO WARNING OR ANY INSTRUCTIONS IN THE MANUAL

REGARDING THIS POTENTIALLY FATAL CONDITION FOR SUSCEPTIBLE

PEOPLE." Complaint in NHTSA ODI database, ODI ID No. 1065573, date of

incident July 12, 2014.

- "MY CAR SMELLS LIKE MILDEW AND MOLDY. I HAVE TAKEN IT

TO THE DEALER ABOUT 3 TIMES ABOUT THIS SITUATION. I HAVE

RESPIRATORY PROBLEMS AND ALLERGIES AND I CAN HARDLY USED

THIS CAR, IT STINKS AND BOTHERS MY BREATHING" Complaint in

NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

115.   As the above sampling of complaints makes clear, Class

Members have been vocal in complaining to NHTSA ODI about the HVAC System

Defect since at least 2008, and Mercedes was, or should have been, aware of and

monitoring those complaints, and thus should have known about the HVAC System

Defect since at least 2008, and certainly well before Plaintiffs and Class Members

purchased or leased their Class Vehicles.

**H.   Mercedes's Knowledge of the HVAC System Defect Gleaned From Class Member Complaints on Public Online Forums**

116.   In addition to complaints made directly to Mercedes and

collected by NHTSA ODI, many Class Vehicle owners posted complaints about the

HVAC System Defect on public online vehicle owner forums. The following is a small sampling of such complaints:

117. "Took my 09 <u>C300</u> in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" http://www.benzworld.org/forums/ (posted on March 2011)

• "Definitely a strong odor coming from the HVAC system that makes it a little embarrassing to have others ride along in your "luxury" automobile. Any advice on how to completely correct this would be appreciated." <u>www.repairpal.com</u>

• "Crayon type smell in the HVAC system that is so pungent that the wife can't even stand to be in the car." www.repairpal.com

• "I have noticed a very bad or mushy smell when I start my car with A/C off( after I have shut the car for sometime and the AC was running when i shut the car). This gets better in 10-15 seconds after I turn the AC on. The smell is a very strong smell of moisture with stangnant air.... Does anyone have the same experience? I am worried as it might be a problem with my cabin air filter. My car is only 3000miles on it. Thanks" <u>http://mbworld.org/forums/</u> (posted on March 2012).

• "Whenever i turn the air on, the first 30 seconds it smells really bad, i have to pen the windows till it clears out. I checked all the filters already. Any idea how can i make it smell nice/normal?? thnx alot,Lina." Answers.yahoo.com (posted 2007).

• "My wife complained that our 2014 S550 also had musty dirty socks smell 7 months after purchase. I confirmed the smell and my wife's multiple friends confirmed the "sour stinking socks smell". I took the car (S550) to the FJ Newport but they say unable to comfirm the smell and told us to pick up the car. They also say that they don't have any known problem with 2014 S550 and further say that the advisor is told to not take the car in the shop unless they can verify the smell. I

guess all dealer techs are very insensitive to smells.^^ So we had to pick up the car and bring the car back home. We stopped driving the S550 for a while (weeks) until we are sure of mold free. Because both my wife and I have a certain genetric marker and also have compromised auto immune system and we cannot deal with any mold issue if there exists. Mbworld.org (posted December 2014)

- "My problem concerns a 2001 C320 with 60,000 miles. The climate control emits a extremely musty sower smell from the air vents when the vehicle is first started with the AC on. I presume the air ducts are clear of anything that might smell as the smell is absent when in the heat mode. I have wondered if the problem might be related to the AC charging system, receiver/drier, or a condensation drain tube etc. I know little or nothing about my MB AC. Any thoughts or advice are appreciated before I start dismantling & throw parts at it." www.mbca.org (posted October 2004).

- "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser (left out some MAJOR, blue, 12 point bolts found under the mat). All seat bolts are installed and are black in color. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." peachparts.com (posted April 2007).

- "I am going to start this by copying the information that I sent to the Nevada DMW and to Mercedes corporate as well as the dealership. Mercedes WILL NOT respond to our complaints and neither will the dealership. Here is a background on

this terrible car that is a big waste of money! We purchased the vehicle on December 3, 2011. On December 20, 2011, with only 648 miles on the vehicle, the vehicle had to be towed out of our garage due to an issue with the transmission. The transmission gave out. Had to be reassembled. On May 2, 2012, with 4,280 miles on the vehicle, we brought it in because of a terrible moldy, wet smell coming from the air vents. The air filter was removed, replaced and was put into the blowers. The AC system was also revitalized. The smell came back within two days. The dealership did not fix this problem." Forum.edmunds.com (posted February 2013).

• "Visitor, 2006 Mercedes-Benz C230, 45,000 mi. Smelly mildew hvac." Forum repairpal.com/mildew-in-heater-box-403

• "The heating, ventilation and AC (HVAC) heater box is susceptible to mildew buildup. This can result in a musty odor from the HVAC system, most noticeable when the system is first turned on." Forum repairpal.com/mildew-in-heater-box-403

• "We just dropped our 2015 ML 350 off at the dealership due to an extreme vinegar emmis[s]ion from the ac. The tech said it will be $330 to clean/flush and replace the filter as this issue is NOT covered under the bumper to bumper war[r]anty. Its a very common problem, apparently, as he gave us his very "rehearsed" answer as to why this happens. (The condensation has nowhere to escape and becomes moldy). He suggested we park it on a slope and that we should turn off the ac 5 mins before we arrive at our destination !

I dont think that we should have to babysit the ac in a luxury car! He also said that ALL luxury cars have this issue. Well, we've owned Audi's, BMW's and Lexus products all with NO ac issues. So I'm calling BS on Mercedes and I believe that they have know about this issue for years and should be including this service cost

in the waranty. Plus, from what I've read this will happen often, its not a 1 time fix." Bbenzworld.org (posted February 2016)

118. As shown by this small sampling of complaints from websites such as www.mbworld.com, www.benzworld.com, www.repairpal.com, www.answers.yahoo.com, www.mbca.org, www.edmunds.com, and repairpal.com consumers have been vocal in complaining about the HVAC System Defects and the damage being caused by these Defects. A multi-billion dollar vehicle manufacturing company such as Mercedes undoubtedly had and has a marketing department that tracks such sites and should reasonably have been aware of the HVAC System Defect in the Class Vehicles.

119. In sum, as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, Mercedes was aware of the HVAC System Defect, should have been aware of the HVAC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the HVAC System Defect, based on, among others, the following sources:

a. Arbitration action against Mercedes related to the Defect;

b. Detailed data gathered by Mercedes about large number of HVAC System Defect repairs;

c. Knowledge Mercedes had of the large number of replacement HVAC Systems ordered from Mercedes;

d. Numerous and consistent vehicle owner complaints made directly to Mercedes about the HVAC System Defect;

e. Numerous and consistent vehicle owner complaints collected by NHTSA ODI about the HVAC System Defect;

f. Numerous and consistent vehicle owner complaints made on online vehicle owner forums;

g.      Service bulletins sent by Mercedes to its dealerships evincing knowledge of ongoing issues with HVAC Systems in the Class Vehicles; and

h.      Mercedes service center employees' familiarity with and knowledge of the HVAC System Defect.

120.    Moreover, the large number and consistency of Class Member complaints describing the HVAC System Defect's propensity to cause a moldy odor to emit from the air-conditioning underscores the fact that Class Members considered the HVAC System Defect to be a material issue to the reasonable consumer.

<div align="center">**Applicable Warranties**</div>

121.    Mercedes sold Class Vehicles with a New Vehicle Limited warranty which included, among other warranties, protections against

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period. …
>
> This warranty is for 48 months or 50,000 miles, whichever occurs first."
>
> … Warranty repairs will be made at no charge for parts and labor.

122.    Mercedes represents that its Certified Pre-Owned ("CPO") vehicles "are backed by one of the most comprehensive certified pre-owned warranties available." The program includes a warranty for 12 months or up to 100,000 total accumulated vehicles miles. Mercedes represents that its CPO vehicles are factory backed and the limited warranty provides up to five years or 100,000 total vehicle accumulated miles of coverage. Both Mercedes's new vehicle Limited Warranty and Certified Pre-Owned Limited Warranty and Extended

Warranty extend coverage to the climate control system, which includes the HVAC system.

123.   Based on Plaintiffs' experiences and reports from other consumers, Mercedes refuses to cover the nonpermanent "fixes" (changing the filter and flushing the System) under warranty, and instead requires Class Members pay out of pocket for these nonpermanent "fixes" for the HVAC System Defect even if Class Members' vehicle remained under warranty at the time.

**Mercedes's Marketing and Concealment**

124.   Upon information and belief, Mercedes knowingly manufactured and sold the Class Vehicles with the HVAC System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles HVAC Systems.

125.   Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

126.   Mercedes's marketing material describes the various Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

127.   Although Mercedes knew of the need to disinfect the climate control systems in Class Vehicles to mitigate the growth of Mold and curb foul odors, it failed to notify Plaintiff's and Class Members of this requirement prior to their purchase of the vehicle. Thus, misrepresenting the maintenance requirements of Class Vehicles.

128.   Mercedes also touts "a rigorous 27-point service checklist to keep your Mercedes-Benz running effortlessly for the next 10,000," implying that Class Vehicles will require less-frequent maintenance than other vehicles. This 27-

1    point service checklist includes pre-road test checks of the air cleaner/filter and

2    climate control system.

3         129.   Mercedes marketing materials advertised the vehicles as

4    'enjoyable' to 'everyone' and 'soothing' and "filters dust and pollen as small as

5    0.0002" from the air. It also promoted videos stating its vehicles are "engineering

6    excellence" and "an automotive masterpiece." Furthermore, it stated, "Soothing.

7    Standard dual-zone automatic climate control allows the driver and front passenger

8    to enjoy individualized comfort in any season. The system filters dust and pollen

9    from the cabin, while a sensor monitors the angle and intensity of sunlight for more

10   even control of temperature." This led Plaintiffs and Class Members to form a

11   reasonable belief and expectation that mold/mildew and foul smells would not

12   emanate from the vehicle if contained in the air and certainly caused the reasonable

13   consumer not to expect that the vehicle itself would harbor and facilitate the growth

14   of organic materials regularly giving rise to foul odors making the use of Class

15   Vehicles anything but soothing or enjoyable.

16        130.   Further, Mercedes represents that its Certified Pre Owned

17   vehicles must "meet stringent criteria and pass a rigorous inspection." This

18   certification process involves a 164-point inspection, which includes a test of

19   "Automatic Climate Control Function, Regulation, Display, Odors." Mercedes

20   promises that CPO vehicle purchasers "get industry-leading coverage."

21        131.   According to its consumer brochures, "[t]he Mercedes-Benz

22   Certified Pre Owned vehicle offers safety, performance and reliability." Vehicles

23   that have been Certified Pre-Owned purportedly have passed a thorough

24   certification inspection. According to its CPO consumer brochure, all Mercedes

25   CPO vehicles undergo a "climate control inspection" during a road test conducted

26   by a Mercedes-Benz technician and "[a]ny noted deficiencies are repaired, replaced

27   or reconditioned" before the vehicle is sold.

28

132.   In practice, the Class Vehicles are not as comfortable or enjoyable as Mercedes's marketing suggests. Mercedes concealed the fact that the so-called "Luxury" Class Vehicles, which supposedly are "the most advanced vehicles on the road," are instead not even comfortable or enjoyable under ordinary conditions because the HVAC Systems repeatedly and consistently emit foul moldy odors into the passenger cabin.

133.   Mercedes marketed Class Vehicles and Mercedes Pre Paid Maintenance Plans with service intervals it knew or should have known that class vehicles could not and were not capable of lasting the stated service intervals without exhibiting foul odors or smells.

134.   Plaintiffs and Class Members were exposed to Mercedes's long-term, national, multimedia marketing campaign touting the supposed sophistication and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase/lease their Class Vehicles based on Mercedes's misleading marketing that concealed the true, defective nature of the Class Vehicles' HVAC Systems.

135.   Further, Mercedes knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Mercedes has been aware of the HVAC System Defect since at least 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through arbitration action, the high number of HVAC System repairs and replacement part sales, and the numerous and consistent complaints about the HVAC System Defect made directly to Mercedes, collected by NHTSA and posted in public online forums.

136.   Despite Mercedes's knowledge of the Defect, Mercedes told Class Members who called its customer service about the HVAC System Defect that Mercedes had never heard of the problem before and that no others had reported issues with their vehicles' HVAC Systems.

137. In sum, Mercedes has actively concealed the existence and nature of the HVAC System Defect from Class Members since at least 2008 despite its knowledge of the existence and pervasiveness of the HVAC System Defect, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles. Specifically, Mercedes has:

a. Failed to disclose, at and after the time of purchase, lease, and/or repair, any and all known material defects of the Class Vehicles, including the HVAC System Defect;

b. Failed to disclose, at and after the time of purchase, lease, and/or repair, that the Class Vehicles' HVAC Systems were defective and not fit for their intended purposes;

c. Failed to disclose, and actively concealed, the fact that the Class Vehicles' HVAC Systems were defective, despite the fact that Mercedes learned of the HVAC System Defect as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles;

d. Failed to disclose, and actively concealed, the existence and pervasiveness of the HVAC System Defect even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Care, Mercedes dealerships, and Mercedes service centers;

e. Actively concealed the HVAC System Defect by forcing Class Members to bear the cost of temporary "fixes" of replacing the Cabin Air Filter or "flushing the system", while at the same time replacing cabin air filters at no (or lower) cost for those who complained vocally and often, and calling these "goodwill" replacements;

f. Actively concealed the HVAC System Defect by consistently treating the mold and odors by replacing the cabin air filter while leaving the defective HVAC Systems as is, so that the HVAC System Defect is not permanently corrected in Class Members' vehicles, even though Class Members

1   were led to believe that the replacement had cured the moldy odor problem in their

2   vehicles; and

3            g.    Actively concealed the HVAC System Defect by knowingly

4   selling and installing replacement cabin air filters in Class Members' vehicles,

5   while knowing and concealing that the replacements would likely soon exhibit the

6   mold formation and foul, noxious odors because the HVAC Systems, the source of

7   the mold and odors, remained defective, and that by only replacing the cabin air

8   filter, Mercedes forced Class Members to repeatedly repair their Class Vehicles.

9          138.   By engaging in the conduct described above, Mercedes has

10   concealed, and continues to conceal, the HVAC System Defect from Class

11   Members. If Class Members had knowledge of the information Mercedes

12   concealed, they would have factored the existence of the HVAC System Defect into

13   their decision to purchase/lease (or not to purchase/lease) the Class Vehicles.

14                  **Fraudulent Concealment Allegations**

15          139.   Absent discovery, Plaintiffs are unaware of, and unable through

16   reasonable investigation to obtain, the true names and identities of those individuals

17   at Mercedes responsible for disseminating false and misleading marketing materials

18   regarding the Class Vehicles. Mercedes necessarily is in possession of all of this

19   information. Plaintiffs' claims arise out of Mercedes's fraudulent concealment of

20   the HVAC System Defect and the foul moldy air it causes, and its representations

21   about the quality, world-class quality, sophistication, state-of-the-art performance

22   and comfort of the Class Vehicles' HVAC Systems. To the extent that Plaintiffs'

23   claims arise from Mercedes's fraudulent concealment, there is no one document or

24   communication, and no one interaction, upon which Plaintiffs bases their claims.

25   Plaintiffs allege that at all relevant times, including specifically at the time they

26   purchased or leased their Class Vehicles, Mercedes knew, or was reckless in not

27   knowing, of the HVAC System Defect; Mercedes was under a duty to disclose the

28   Defect based upon its exclusive knowledge of it, its affirmative representations

1    about it, and its concealment of it; and Mercedes never disclosed the Defect to the

2    Plaintiffs or the public at any time or place or in any manner.

3           140.   Plaintiffs make the following specific fraud allegations with as

4    much specificity as possible absent access to the information necessarily available

5    only to Mercedes:

6           a.   **Who**: Mercedes actively concealed the HVAC System Defect

7    from Plaintiffs and Class Members while simultaneously touting the safety,

8    comfort, sophistication, and world-class quality of the Class Vehicles, as alleged in

9    paragraphs 124-138, above. Plaintiffs are unaware of, and therefore unable to

10   identify, the true names and identities of those specific individuals at Mercedes

11   responsible for such decisions.

12          b.   **What**: Mercedes knew, or was reckless or negligent in not

13   knowing, that the Class Vehicles contain the HVAC System Defect, as alleged

14   above in paragraphs 87, 93-120. Mercedes concealed the Defect and made

15   representations about the safety, comfort, sophistication, and world-class quality,

16   and other attributes of the Class Vehicles, as specified above in paragraphs 124-

17   138.

18          c.   **When**: Mercedes concealed material information regarding the

19   Defect at all times and made representations about the world-class quality,

20   sophistication, state-of-the-art safety and comfort of the Class Vehicles, starting no

21   later than 2008, or at the subsequent introduction of certain models of Class

22   Vehicles to the market, continuing through the time of sale/lease, and on an

23   ongoing basis, and continuing to this day, as alleged above in paragraphs 124-138.

24   Mercedes has not disclosed the truth about the Defect in the Class Vehicles to

25   anyone outside of Mercedes. Mercedes has never taken any action to inform

26   consumers about the true nature of the Defect in Class Vehicles. And when

27   consumers brought their Vehicles to Mercedes complaining of the foul moldy

28   odors, Mercedes denied any knowledge of or responsibility for the HVAC System

1   Defect, and in many instances, actually blamed the owner for causing the

2   odor/problem.

3              d.    **Where**: Mercedes concealed material information regarding the

4   true nature of the Defect in every communication it had with Plaintiffs and Class

5   Members and made representations about the world-class quality, sophistication,

6   state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs are aware of no

7   document, communication, or other place or thing, in which Mercedes disclosed the

8   truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Such

9   information is not adequately disclosed in any sales documents, displays,

10  advertisements, warranties, owner's manual, or on Mercedes's website.

11             e.    **How**: Mercedes concealed the HVAC System Defect from

12  Plaintiffs and Class Members and made representations about the world-class

13  quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles.

14  Mercedes actively concealed the truth about the existence and nature of the Defect

15  from Plaintiffs and Class Members at all times, even though it knew about the

16  Defect and knew that information about the Defect would be important to a

17  reasonable consumer and Mercedes promised in its marketing materials that Class

18  Vehicles have qualities that they do not have.

19             f.    **Why**: Mercedes actively concealed material information about

20  the Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class

21  Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing

22  competitors' vehicles and made representations about the world-class quality,

23  sophistication, state-of-the-art safety and comfort of the Class Vehicles. Had

24  Mercedes disclosed the truth, for example in its advertisements or other materials or

25  communications, Plaintiffs (and reasonable consumers) would have been aware of

26  it, and would not have bought the Class Vehicles or would have paid less for them.

27

28

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

141.   Upon information and belief, Mercedes has known of the HVAC System Defect in the Class Vehicles since at least 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, and has concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the HVAC System Defect, even when directly asked about it by Class Members during communications with Mercedes, Mercedes Customer Care, Mercedes dealerships, and Mercedes service centers. Mercedes continues to conceal the Defect to this day.

142.   Any applicable statute of limitation has been tolled by Mercedes's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Estoppel

143.   Mercedes was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles. Mercedes actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the quality, world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles. Plaintiffs and Class Members reasonably relied upon Mercedes's knowing and affirmative representations and/or active concealment of these facts. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation in defense of this action.

### Discovery Rule

144.   The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles contained the HVAC System Defect.

145.   However, Plaintiffs and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the HVAC System Defect caused their vehicles to develop mold and emit foul, noxious odors. Even then, Plaintiffs and Class Members had no reason to know the foul moldy odors were caused by a defect in the Class Vehicles because of Mercedes's active concealment of the HVAC System Defect. Not only did Mercedes fail to notify Plaintiffs or Class Members about the HVAC System Defect, Mercedes in fact denied any knowledge of or responsibility for the HVAC System Defect when directly asked about it, and in many instances, actually blamed the owner for causing the odor/problem. Thus Plaintiffs and Class Members were not reasonably able to discover the HVAC System Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the HVAC System Defect caused their Vehicles to form mold and emit foul, noxious odors.

## CLASS ACTION ALLEGATIONS

146.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other Class Members similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

147.   Plaintiffs bring this class action on behalf of themselves and all other similarly situated members of the proposed Class, defined as follows:

> All persons in the United States who purchased or leased a Class Vehicle with the HVAC System.

148.   In the alternative, Plaintiffs propose the following Classes:

> California Class: All residents of California (and states with similar laws) who purchased or leased a Class

Vehicle with the HVAC System.

Georgia Class: All residents of Georgia (and states with similar laws) who purchased or leased a Class Vehicle with the HVAC System.

149.   Excluded from the Class are: (1) Mercedes, any entity or division in which Mercedes has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded, otherwise divided into subclasses, or modified in any other way.

**Numerosity**

150.   Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Mercedes's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

**Typicality**

151.   The claims of the representative Plaintiffs are typical of the claims of Class Members in that the representative Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Mercedes. The representative Plaintiffs, like all Class Members, have been damaged by Mercedes's misconduct in that they have purchased a Vehicle they would not have purchased, or would not have purchased at the price paid, and

1   have incurred or will incur the cost of repairs relating to and caused by the HVAC

2   System Defect. Furthermore, the factual bases of Mercedes's misconduct are

3   common to all Class Members and represent a common thread of misconduct

4   resulting in injury to all Class Members.

5   <center>**Adequate Representation**</center>

6        152.   Plaintiffs will fairly and adequately represent and protect the

7   interests of their respective Class Members. Plaintiffs have retained counsel with

8   substantial experience in prosecuting consumer class actions, including actions

9   involving defective vehicles.

10        153.   Plaintiffs and their counsel are committed to vigorously

11   prosecuting this action on behalf of the Classes, and have the financial resources to

12   do so. Neither Plaintiffs nor their counsel has interests adverse to those of the

13   Classes.

14   <center>**Predominance of Common Issues**</center>

15        154.   There are numerous questions of law and fact common to

16   Plaintiffs and Class Members that predominate over any question affecting only

17   individual Class Members, the answer to which will advance resolution of the

18   litigation as to all Class Members. These common legal and factual issues include:

19        a.   whether the HVAC System in the Class Vehicles is defective;

20        b.   whether Mercedes knew or should have known about the HVAC

21   System Defect, and, if yes, how long Mercedes has known of the defect;

22        c.   whether the defective nature of the Class Vehicles constitutes a

23   material fact reasonable consumers would have considered in deciding whether to

24   purchase a Class Vehicle;

25        d.   whether Mercedes has a duty to disclose the defective nature of

26   the Class Vehicles to Plaintiffs and Class Members;

27        e.   whether Mercedes omitted and failed to disclose material facts

28   about the Class Vehicles;

1          f.     whether Mercedes's concealment of the true defective nature of

2    the Class Vehicles induced Plaintiffs and Class Members to act to their detriment

3    by purchasing Class Vehicles;

4          g.     whether Mercedes represented, through its words and conduct,

5    that the Class Vehicles had characteristics, uses, or benefits that they did not

6    actually have, in violation of California's Consumer Legal Remedies Act

7    ("CLRA");

8          h.     whether Mercedes represented, through its words and conduct,

9    that the Class Vehicles were of a particular standard, quality, or grade when they

10   were of another, in violation of the CLRA;

11         i.     whether Mercedes advertised the Class Vehicles with the intent

12   not to sell them as advertised, in violation of the CLRA;

13         j.     whether Mercedes's affirmative misrepresentations about the

14   true defective nature of the Class Vehicles were likely to mislead or deceive, and

15   therefore fraudulent, within the meaning of California's Unfair Competition Law

16   (UCL);

17         k.     whether Mercedes's affirmative misrepresentations about the

18   true defective nature of the Class Vehicles were and are unfair within the meaning

19   of the UCL;

20         l.     whether Mercedes represented, through its words and conduct,

21   that the Class Vehicles had characteristics, uses, or benefits that they did not

22   actually have, in violation of Georgia's Fair Business Practices Act ("Georgia

23   FBPA");

24         m.     whether Mercedes represented, through its words and conduct,

25   that the Class Vehicles were of a particular standard, quality, or grade when they

26   were of another, in violation of the Georgia FBPA;

27         n.     whether Mercedes advertised the Class Vehicles with the intent

28   not to sell them as advertised, in violation of the Georgia FBPA;

1          o.     whether Mercedes's affirmative misrepresentations about the

2    true defective nature of the Class Vehicles were likely to create confusion or

3    misunderstanding, and therefore fraudulent, within the meaning of Georgia's

4    Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

5          p.     whether Mercedes's affirmative misrepresentations about the

6    true defective nature of the Class Vehicles were and are deceptive within the

7    meaning of the Georgia UDTPA.

8          q.     whether the Class Vehicles were unfit for the ordinary purposes

9    for which they were used, in violation of the implied warranty of merchantability;

10         r.     whether Plaintiffs and the other Class Members are entitled to a

11   declaratory judgment stating that the HVAC Systems in Class Vehicles are

12   defective and/or not merchantable;

13         s.     whether Plaintiffs and the other Class Members are entitled to

14   equitable relief, including, but not limited to, a preliminary and/or permanent

15   injunction; and

16         t.     whether Mercedes should be declared financially responsible for

17   notifying all Class Members of the problems with the Class Vehicles and for the

18   costs and expenses of permanently remedying the HVAC System Defect in the

19   Class Vehicles; and

20         u.     whether Mercedes is obligated to inform Class Members of their

21   right to seek reimbursement for having paid to diagnose, repair, or replace the

22   defective HVAC Systems.

23                              **Superiority**

24         155.   Plaintiffs and Class Members have all suffered and will continue

25   to suffer harm and damages as a result of Mercedes's unlawful and wrongful

26   conduct. A class action is superior to other available methods for the fair and

27   efficient adjudication of this controversy.

28

156.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Mercedes's misconduct. Absent a class action, Class Members will continue to incur damages, and Mercedes's misconduct will continue without remedy.

157.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## **FIRST CAUSE OF ACTION**

(Violation of California's Consumer Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, *et seq.*)

158.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

159.   Plaintiffs Manan Bhatt and Lisa Ruh bring this cause of action for themselves and on behalf of California Class Members.

160.   Mercedes is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

161.   Plaintiffs and California Class Members are "consumers" within the meaning of the CLRA. Cal. Civ. Code § 1761(d).

162.   The purchases of Class Vehicles and the warranties by Plaintiffs and Class Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code § 1761(e).

163.   The Class Vehicles and the warranties constitute "goods" or "services" as defined by the CLRA. Cal. Civ. Code §1761(a) and (b).

164.   Plaintiffs and Class Members purchased the Class Vehicles and the warranties for personal, family, and household purposes as meant by the CLRA. Cal. Civ. Code § 1761(d).

165.   Mercedes's affirmative misrepresentations, active concealment, failures to disclose, and omissions regarding the Class Vehicles and the warranties violated the CLRA in the following ways:

a.   Mercedes misrepresented that the Class Vehicles and the warranties had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.   Mercedes misrepresented that the Class Vehicles and the warranties were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c.   Mercedes advertised the Class Vehicles and the warranties with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d.   Mercedes  misrepresented that the Class Vehicles and the warranties conferred or involved rights, remedies, or obligations that they did not have (Cal. Civ. Code § 1770(a)(14)); and

e.   Mercedes misrepresented that the Class Vehicles and the warranties were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

166.   Mercedes's unfair and deceptive acts or practices occurred repeatedly in Mercedes's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Class Vehicles.

167.   Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems suffered from an inherent defect, were defectively designed or manufactured, would

1   exhibit problems such as mold growth and the emission of foul and noxious odors,

2   and were not suitable for their intended use.

3          168.   By 2008 at the latest, Mercedes had exclusive knowledge of

4   material facts concerning the existence of the HVAC System Defects in its Class

5   Vehicles. Furthermore, Mercedes actively concealed these defects from consumers

6   by denying the existence of the defects to Class Members who contacted Mercedes

7   about the moldy smell, failing to issue a service advisory and/or recall and failing to

8   offer Class members a permanent solution to the HVAC System Defect.

9          169.   Mercedes was under a duty to Plaintiffs and Class Members to

10  disclose the defective nature of the HVAC Systems, as well as the associated costs

11  that would have to be repeatedly expended in order to repair the Class Vehicles due

12  to the HVAC System Defect, because:

13         a.     Mercedes was in a superior position to know the true state of

14  facts about the HVAC System Defect in the Class Vehicles;

15         b.     Plaintiffs and Class Members could not reasonably have been

16  expected to learn or discover that the Class Vehicles had the HVAC System Defect

17  until, at the earliest, the manifestation of the Defect; and

18         c.     Mercedes knew that Plaintiffs and Class Members could not

19  reasonably have been expected to learn or discover the HVAC System Defect prior

20  to its manifestation.

21         170.   In failing to disclose the defective nature of the Class Vehicles,

22  Mercedes knowingly and intentionally concealed material facts and breached its

23  duty not to do so.

24         171.   The facts concealed or not disclosed by Mercedes to Plaintiffs

25  and Class Members are material in that a reasonable consumer would have

26  considered them to be important in deciding whether or not to purchase or lease a

27  Class Vehicle. Moreover, a reasonable consumer would consider the HVAC

28  System Defect to be an undesirable quality, as Plaintiffs and Class Members did.

1    Had Plaintiffs and other Class Members known that the Class Vehicles had the

2    HVAC System Defect, they would not have purchased or leased a Class Vehicle, or

3    would not have done so at the price paid.

4         172.   Plaintiffs and Class Members are reasonable consumers who did

5    not expect their Class Vehicles to experience a HVAC System Defect. It is a

6    reasonable and objective consumer expectation for consumers to expect the HVAC

7    System _not to_ cause the growth of mold and mildew within the System or emit

8    moldy and noxious odors through the HVAC System vents.

9         173.   As a result of Mercedes's misconduct, Plaintiffs and Class

10   Members have been harmed and have suffered actual damages in that the Class

11   Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC

12   System Defect, causing inconvenience, creating an uncomfortable environment for

13   vehicle occupants, and causing Class Members to spend money, even when the

14   Vehicle was still under warranty, to repeatedly repair or temporarily fix the

15   recurring odors caused by the Defect.

16        174.   As a direct and proximate result of Mercedes's unfair or

17   deceptive acts or practices, Plaintiffs and Class Members have suffered and will

18   continue to suffer actual damages in that they have experienced and may continue

19   to experience their Class Vehicles' HVAC Systems growing mold and emitting

20   noxious odors, for which there is no permanent fix.

21        175.   Plaintiffs and the Class are entitled to equitable relief.

22        176.   Mercedes received proper notice of its alleged violations of the

23   CLRA pursuant to Cal. Civ. Code § 1782(a), via a letter sent to Mercedes and its

24   registered service agent on August 17, 2015, on behalf of Plaintiff Manan Bhatt and

25   all others similarly situated. Mercedes failed to provide the appropriate relief for its

26   violation of the CLRA within 30 days of the date of the notification letter. The

27   notice letter is attached hereto as Exhibit D.

28

177.   Thus, pursuant to Cal. Civ. Code §§ 1780(a), 1780(e), and 1782(a), Plaintiffs seek, in addition to equitable relief, actual damages, restitution, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## SECOND CAUSE OF ACTION

(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*)

178.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

179.   Plaintiffs Manan Bhatt and Lisa Ruh bring this cause of action for themselves and on behalf of California Class Members.

180.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Mercedes engaged in conduct that violated each of this statute's three prongs.

181.   Mercedes committed an *unlawful business act or practice* in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by systematically breaching its warranty obligations and by violating the CLRA and the Song-Beverly Consumer Warranty Act as alleged in Paragraphs 159 – 178, above.

182.   Mercedes committed *unfair business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, because the acts and practices described herein, including but not limited to Mercedes's failure to provide a permanent remedy to fix the HVAC System Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. Mercedes's acts and practices were additionally unfair because the harm to Plaintiffs and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further,

1    Mercedes's acts and practices were unfair in that they were contrary to legislatively

2    declared or public policy.

3            183.   Mercedes committed *fraudulent business acts and practices* in

4    violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it concealed the

5    existence and nature of the HVAC System Defect, while representing in its

6    marketing, advertising, and other broadly disseminated representations that the

7    Class Vehicles were "comfortable," "state of the art," and manufactured to be the

8    "most advanced vehicles on the road" when, in fact, they are not. Mercedes's

9    representations and active concealment of the Defect are likely to mislead the

10   public with regard to the true defective nature of the Class Vehicles.

11           184.   Mercedes's unfair or deceptive acts or practices occurred

12   repeatedly in the course of Mercedes's trade or business, and were likely to mislead

13   a substantial portion of the purchasing public.

14           185.   Plaintiffs relied on Mercedes's material misrepresentations and

15   nondisclosures, and would not have purchased, or would have paid less money for,

16   the Class Vehicles had they known the truth.

17           186.   As a direct and proximate result of Mercedes's unfair, unlawful,

18   and deceptive practices, Plaintiffs have lost money or property.

19           187.   Plaintiffs and Class Members seek an order enjoining Mercedes

20   from committing such unlawful, unfair, and fraudulent business practices, and seek

21   restitution pursuant to Cal. Bus. & Prof. Code § 17203. Plaintiffs also seek

22   attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

23                       **THIRD CAUSE OF ACTION**

24       (Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)

25           188.   Plaintiffs incorporate by reference each allegation set forth in

26   the preceding paragraphs.

27           189.   Mercedes's Class Vehicles are "consumer goods" within the

28   meaning of Civil Code § 1791(a).

190.   Mercedes is a "manufacturer" within the meaning of Civil Code § 1791(j).

191.   Plaintiffs and California Class members who purchased or leased their Class Vehicles within the State of California and are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

192.   Mercedes impliedly warranted to Plaintiffs and the California Class members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

193.   Mercedes impliedly warranted to Plaintiffs and the California Class Members that it would repair or replace any defective products, including the defective HVAC System that produces the moldy odor.

194.   The propensity of the HVAC System defect to create a noxious and foul moldy odor renders the Class Vehicles to not be of the quality that a buyer would reasonably expect, and therefore were not merchantable.

195.   The Class Vehicles do not conform to the promises or affirmations of fact made by Mercedes in its promotional materials and vehicle owner manuals in that the HVAC System Defect creates an environment in the Class Vehicles' cabin that is neither "comfortable" nor the product of "state-of-the-art engineering."

196.   In violation of Civil Code § 1791.1(a), Mercedes breached its Implied Warranty by selling Class Vehicles that were defective and refusing to replace and/or repair the defective HVAC Systems which cannot be repaired by replacing the cabin air filter.

197.   The HVAC System defect has deprived Plaintiffs and the California Class of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

198.   As a result of Mercedes's breach of its Implied Warranties, Plaintiffs and the California Class members have been damaged in an amount to be proven at trial and are entitled to relief under the statute.

## FOURTH CAUSE OF ACTION

(Breach of Express Warranty – Magnuson-Moss Warranty Act)

199.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

200.   The Class Vehicles are consumer product as defined in 15 U.S.C. § 2301(1).

201.   Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

202.   Mercedes is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

203.   Mercedes provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

204.   Mercedes has breached the Express Warranty by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including defects within the climate control system, which contains the HVAC System.

205.   At the time Class Vehicles were sold, Mercedes knew of the defects they possessed and offered an Express Warranty with no intention of honoring said warranty with respect to the known defects.

206.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the

1   consumer as a condition of securing remedy, then the consumer shall be entitled to

2   recover reasonable incidental expenses which are so incurred in any action against

3   the warrantor."

4        207.   At no time has Mercedes offered a permanent or adequate repair

5   or replacement of the HVAC System that would permanently prevent the moldy

6   odor. Despite repeated demands by Plaintiffs, and members of the Class, that

7   Mercedes pay the labor costs and incidental expenses associated with repairing or

8   replacing the HVAC System, and with replacing the cabin air filter—a temporary

9   solution--Mercedes has refused to do so. Mercedes's refusal to provide an adequate

10  repair or replacement and to pay for its installation violates 15 U.S.C. § 2304(d)(1).

11       208.   Mercedes was afforded a reasonable opportunity to cure its

12  breach of the Express Warranty, but failed to do so.

13       209.   Under 15 U.S.C. § 2310(e), notice of breach of warranty need

14  not be provided until after Plaintiffs have been appointed Class Representatives.

15       210.   As a direct and proximate result of Mercedes's breach of its

16  express written warranties, Plaintiffs and the members of the Class have been

17  damaged in an amount to be proven at trial.

18  **FIFTH CAUSE OF ACTION**

19  (Breach of Implied Warranty)

20       211.   Plaintiffs incorporate by reference each allegation set forth in

21  the preceding paragraphs.

22       212.   When it sold its Class Vehicles, Mercedes extended an implied

23  warranty to the members of the Class that the subject vehicles were merchantable

24  and fit for the ordinary purpose for which such goods were sold. Persons who

25  purchased a vehicle from Mercedes are entitled to the benefit of their bargain: a

26  vehicle with a nondefective HVAC system that does not emit moldy air.

27       213.   Mercedes breached this implied warranty in that its Class

28  Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality.

214.   Had the HVAC System Defect that existed at the time of sale been known, the Class Vehicles could not have been sold, or could not have been sold at the same price.

215.   As a direct and proximate result of Mercedes's breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Breach of Implied Warranty – Magnuson-Moss Warranty Act)

216.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

217.   Plaintiffs and the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

218.   Defendant Mercedes is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

219.   Defendant Mercedes is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

220.   The subject Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

221.   Mercedes extended an implied warranty to Plaintiffs and the members of the Class by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' HVAC Systems.

222.   Mercedes breached this implied warranty by selling its Class Vehicles with Defective HVAC Systems that were neither merchantable nor fit for their intended purpose.

223.   Mercedes extended an implied warranty to Plaintiffs and the members of the Class by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in the subject Class Vehicles' HVAC Systems.

224. Mercedes breached this implied warranty by selling Class Vehicles that were neither merchantable nor fit for their intended purpose.

225. Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiff have been appointed Class Representatives.

226. Mercedes was notified of its breach of warranty by way of Plaintiffs' August 17, 2015, letter. A true and correct copy of the letter sent to Mercedes is attached as Exhibit D.

227. As a direct and proximate result of Mercedes's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs, and the Class, have been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

(Violations of Georgia Fair Business Practices Act ("Georgia FBPA"), Ga. Code. Ann. § 10-1-390, *et seq.*)

228. Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

229. Plaintiffs Sunil Amin and Trushar Patel bring this cause of action for themselves and on behalf of the Georgia Class.

230. Mercedes is a "person" as defined by the Georgia FBPA. § 10-1-392(a)(24).

231. Plaintiffs and the Georgia Class are "consumers" within the meaning of the Georgia FBPA O.C.G.A § 10-1-392(a)(6).

232. The purchase or lease of Class Vehicles by Plaintiffs and the Georgia Class constituted "consumer transactions" as defined by the Georgia FBPA § 10-1-392(a)(10).

233. The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but

1    not limited to "representing that goods or services have sponsorship, approval,

2    characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting

3    that goods or services are of a particular standard, quality, or grade … if they are of

4    another," and "[a]dvertising goods or services with intent not to sell them as

5    advertised," Ga. Code. Ann. § 10-1-393(b)(5), (7) & (9).

6           234.   By failing to disclose the defective nature of the Class Vehicles

7    to Plaintiffs and the Georgia Class, Mercedes violated the Georgia FBPA, because

8    Mercedes represented that the Class Vehicles had characteristics and benefits that

9    they do not have, and represented that the Class Vehicles were of a particular

10   standard, quality, or grade (i.e. state-of-the-art, comfortable, etc.) when they were

11   of another. *See* Ga. Code. Ann. § 10-1-393(b)(5) & (7).

12          235.   Mercedes advertised the Class Vehicles (as state-of-the-art,

13   comfortable, etc.) with the intent not to sell them as advertised, in violation of Ga.

14   Code. Ann. § 10-1-393(b)(9).

15          236.   Mercedes's unfair and deceptive acts or practices occurred

16   repeatedly in Mercedes's course of trade or business, were material, were capable

17   of deceiving a substantial portion of the purchasing public, and as a result, caused

18   economic harm on owners and purchasers of the Class Vehicles.

19          237.   Mercedes knew, by 2008 at the latest, and certainly before the

20   sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems

21   suffered from an inherent defect, were defectively designed or manufactured, would

22   exhibit problems such as mold growth and the emission of foul and noxious odors,

23   and were not suitable for their intended use.

24          238.   By 2008 at the latest, Mercedes had exclusive knowledge of

25   material facts concerning the existence of the HVAC System Defects in its Class

26   Vehicles. Furthermore, Mercedes actively concealed these defects from consumers

27   by denying the existence of the defects to Class Members who contacted Mercedes

28

1    about the moldy smell, failing to issue a service advisory and/or recall and failing to

2    offer Class members a permanent solution to the HVAC System Defect.

3         239.   Mercedes was under a duty to Plaintiffs and Class Members to

4    disclose the defective nature of the HVAC Systems, as well as the associated costs

5    that would have to be repeatedly expended in order to repair the Class Vehicles due

6    to the HVAC System Defect, because:

7         a.   Mercedes was in a superior position to know the true state of

8    facts about the HVAC System Defect in the Class Vehicles;

9         b.   Plaintiffs and the Georgia Class could not reasonably have been

10   expected to learn or discover that the Class Vehicles had the HVAC System Defect

11   until, at the earliest, the manifestation of the Defect; and

12        c.   Mercedes knew that Plaintiffs and the Georgia Class could not

13   reasonably have been expected to learn or discover the HVAC System Defect prior

14   to its manifestation.

15        240.   Mercedes knew or should have known that its conduct violated

16   the Georgia FBPA.

17        241.   In failing to disclose the defective nature of the Class Vehicles,

18   and/or denying and misleading as to the true cause and remedy of the noxious foul

19   odor, Mercedes knowingly and intentionally concealed material facts and breached

20   its duty not to do so.

21        242.   The facts concealed or not disclosed by Mercedes to Plaintiffs

22   and the Georgia Class are material in that a reasonable consumer would have

23   considered them to be important in deciding whether or not to purchase or lease a

24   Class Vehicle. Moreover, a reasonable consumer would consider the HVAC

25   System Defect to be an undesirable quality, as Plaintiffs and the Georgia Class did.

26   Had Plaintiffs and other Georgia Class members known that the Class Vehicles had

27   the HVAC System Defect, they would not have purchased or leased a Class

28   Vehicle, or would not have done so at the price paid.

243.   Plaintiffs and Georgia Class are reasonable consumers who did not expect their Class Vehicles to experience a HVAC System Defect. It is a reasonable and objective consumer expectation for consumers to expect the HVAC System <u>not to</u> cause the growth of mold and mildew within the System or emit moldy and noxious odors through the HVAC System vents.

244.   As a result of Mercedes's misconduct, Plaintiffs and the Georgia Class have been harmed and have suffered actual damages in that the Class Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable environment for vehicle occupants, and causing Plaintiffs and the Georgia Class to spend money to repeatedly repair or temporarily fix the recurring odors caused by the Defect.

245.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and the Georgia Class have suffered and will continue to suffer actual damages in that they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix.

246.   Mercedes's violations present a continuing risk to Plaintiffs and to the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

247.   Plaintiffs and the Georgia Class are entitled to equitable relief.

248.   Mercedes has received proper notice of its alleged violations of the FBPA pursuant to Ga. Code. Ann. § 10-1-399(b), via a letter sent to Mercedes and its registered service agent on January 29, 2016. The notice letter is attached hereto as Exhibit C. Mercedes responded through counsel denying the existence of a defect, alleging the problem to be a "maintenance" issue, implying, presumably, that Plaintiffs and Class Members who have experienced these symptoms have all failed to properly maintain their vehicles, and offering Mr. Amin a small amount to resolve his claim alone.

249.   Thus, pursuant to Ga. Code. Ann. § 10-1-399, Plaintiffs seek, in addition to equitable relief, actual, statutory, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA (Ga. Code. Ann. § 10-1-390, *et seq*.) and applicable law.

## EIGHTH CAUSE OF ACTION

(Violations of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-370, *et seq*.)

250.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

251.   Plaintiffs Sunil Amin and Trushar Patel bring this cause of action for themselves and on behalf of the Georgia Class.

252.   Mercedes, Plaintiffs, and the Georgia Class are "persons" within the meaning of the Georgia UDTPA. § 10-1-371(5).

253.   The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusion or misunderstanding," and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-372.

254.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and the Georgia Class, Mercedes engaged in deceptive trade practices in violation of the Georgia UDTPA, because Mercedes represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. state-of-the-art, comfortable, etc.) when they were of another. *See* Ga. Code. Ann. § 10-1-372(5), (7), (9).

255. Mercedes advertised the Class Vehicles (as state-of-the-art, comfortable, etc.) with the intent not to sell them as advertised, in violation of Ga. Code. Ann. § 10-1-372(12).

256. Mercedes's unfair and deceptive acts or practices occurred repeatedly in Mercedes's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Class Vehicles.

257. Mercedes knew, by 2008 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems suffered from an inherent defect, were defectively designed or manufactured, would exhibit problems such as mold growth and the emission of foul and noxious odors, and were not suitable for their intended use.

258. By 2008 at the latest, Mercedes had exclusive knowledge of material facts concerning the existence of the HVAC System Defects in its Class Vehicles. Furthermore, Mercedes actively concealed these defects from consumers by denying the existence of the defects to the Georgia Class who contacted Mercedes about the moldy smell, failing to issue a service advisory and/or recall and failing to offer Class members a permanent solution to the HVAC System Defect.

259. Mercedes was under a duty to Plaintiffs and the Georgia Class to disclose the defective nature of the HVAC Systems, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the HVAC System Defect, because:

a. Mercedes was in a superior position to know the true state of facts about the HVAC System Defect in the Class Vehicles;

b. Plaintiffs and the Georgia Class could not reasonably have been expected to learn or discover that the Class Vehicles had the HVAC System Defect until, at the earliest, the manifestation of the Defect; and

c.      Mercedes knew that Plaintiffs and the Georgia Class could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

260.   Despite possessing information to the contrary, Mercedes failed to disclose and actively concealed the defect while continuing to market the Class Vehicles as comfortable, world-class, and reliable. The deception made reasonable consumers believe that Class Vehicles were of high quality and designed and made by a manufacturer that stood behind its vehicles once they were on the road.

261.   Mercedes knew or should have known that its conduct violated the Georgia UDTPA.

262.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the noxious foul odor, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

263.   The facts concealed or not disclosed by Mercedes to Plaintiffs and the Georgia Class are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and the Georgia Class known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, not purchased a Mercedes vehicle, or would not have done so at the price paid.

264.   Plaintiffs and the Georgia Class are reasonable consumers who did not expect their Class Vehicles to experience a HVAC System Defect. It is a reasonable and objective consumer expectation for consumers to expect the HVAC System not to cause the growth of mold and mildew within the System or emit moldy and noxious odors through the HVAC System vents.

265.   As a result of Mercedes's misconduct, Plaintiffs and the Georgia Class have been harmed and have suffered actual damages in that the Class Vehicles repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable environment for vehicle occupants, and causing Class Members to spend money to repeatedly repair or temporarily fix the recurring odors caused by the Defect.

266.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and the Georgia Class have suffered and will continue to suffer actual damages in that they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix.

267.   Mercedes's violations present a continuing risk to Plaintiffs and to the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

268.   As a direct and proximate result of Mercedes' violations of the Georgia UDTPA, Plaintiffs and the Georgia Class have suffered injury-in-fact and/or actual damage.

269.   Plaintiffs seek an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann. § 10-1-373, and applicable law.

## NINTH CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability)

270.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

271.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members who are Georgia residents ("Georgia Class").

272.   Georgia law states that "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ga. Code. Ann. § 11-2-314.

273.   Defendants are merchants with respect to the goods which they sold to Plaintiff and the Georgia Class. Specifically, Defendants are merchants of light-duty passenger vehicles.

274.   The goods which Defendants provided to Plaintiffs and the Georgia Class were unmerchantable at the time they were sold. Specifically, the Class Vehicles contained HVAC systems emitting foul odors rendering them not fit for ordinary use as automobiles, not able to pass without objection, not of fair average quality and did not confirm with promises and affirmations made.

275.   Defendants' failure to provide vehicles was a breach of the implied warranty of merchantability, and Plaintiff and the other Class Members were damaged in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

### (Fraud by Concealment)

276.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

277.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

278.   Mercedes concealed and suppressed material facts concerning the quality of the Class Vehicles.

279.   Mercedes concealed and suppressed material facts concerning the quality of the HVAC systems in the Class Vehicles.

280.   Mercedes concealed and suppressed material facts concerning the serious defects causing Class Vehicles to emit strong foul odors. Upon information and belief, the defect lies in the evaporator and evaporator box deep within the dashboards of the Class Vehicles. Mercedes knew that Plaintiffs and

Class Members would not be able to inspect or otherwise detect the defect prior to purchasing or leasing the vehicles. Mercedes furthered and relied upon this lack of disclosure to further promote payments of repairs and filters and in some cases accused Plaintiffs and Class Members of causing the problem or paying for filters – all the while concealing the true nature of cause and defect from Plaintiffs and Class Members. Mercedes further denied the very existence the defect and the propensity of foul odors when Plaintiffs and Class Members complained of the defect.

281.   Mercedes concealed and suppressed material facts that point to the nature of the defect being a faulty evaporator design, a $400 to $800 or more part requiring extensive labor and parts to replace and instead pushed "fixes" consisting of filter changes and cleanings which are temporary at best.

282.   Mercedes did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles, that the Class Vehicles were world class, comfortable, warranted and reliable vehicles and concealed the information in order to prevent harm to Defendants' and their products reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Class Vehicles.

283.   Mercedes had a duty to disclose the defects in the Class Vehicles because they were known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the

disclosure of the additional facts set forth above regarding its actual quality, comfort, and usability. Even when faced with complaints regarding the defects, Mercedes misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at purchase and again when the defect was complained of to Defendants. The omitted and concealed facts were material because they directly impact the value, appeal and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose it was purchased, are material concerns to a consumer.

284.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and it did so at the expense of Plaintiffs and Class Members.

285.    On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding defects that exist in Mercedes Vehicles.

286.    Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased cars manufactured by Mercedes or chosen different models not known to exhibit foul odors. Plaintiffs' and Class Members' actions were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

287.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damage because they negotiated and paid value for the Class vehicles not considerate of the defects Mercedes failed to disclose and paid for repairs and parts to attempt to remedy the defect. Had they

1   been aware of the many concealed defects that existed in the Class Vehicles,

2   Plaintiffs would have paid less for their vehicles or would not have purchased or

3   leased them at all.

4            288.   Accordingly, Mercedes is liable to Plaintiffs and Class Members

5   for damages in an amount to be proven at trial.

6            289.   Mercedes' acts were done maliciously, oppressively,

7   deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and

8   Class Members' rights and well-being to enrich Mercedes. Mercedes' conduct

9   warrants an assessment of punitive damages in an amount sufficient to deter such

10  conduct in the future, which amount is to be determined according to proof.

11                     **ELEVENTH CAUSE OF ACTION**

12                            (Unjust Enrichment)

13           290.   Plaintiffs incorporate by reference each allegation set forth in

14  the preceding paragraphs.

15           291.   Mercedes has been unjustly enriched by the purchases of the

16  Class Vehicles by the Plaintiffs and other members of the Class through Plaintiffs

17  and Class member purchasing Class vehicles from Mercedes and purchasing

18  replacement parts from Mercedes that Plaintiffs and Class Members would not have

19  purchased but for the HVAC System defect.

20           292.   Plaintiffs and other members of the Class unknowingly

21  conferred a benefit on Mercedes of which Mercedes had knowledge, since

22  Mercedes was aware of the defective nature of its Class Vehicles' HVAC Systems

23  and the resultant moldy odor problems, but failed to disclose this knowledge and

24  misled Plaintiffs and the other members of the Class regarding the nature and

25  quality of the subject Class Vehicles while profiting from this deception.

26           293.   The circumstances are such that it would be inequitable,

27  unconscionable, and unjust to permit Mercedes to retain the benefit of profits that it

28  unfairly obtained from Plaintiffs and the other members of the Class. These profits

1    include the premium price Plaintiffs and the Class paid for the Class Vehicles and

2    the cost of the parts bought from Mercedes used to repair or alleviate the moldy

3    odor emitted by the HVAC system.

4          294.   Plaintiffs and the other members of the Class, having been

5    damaged by Mercedes's conduct, are entitled to recover or recoup damages as a

6    result of the unjust enrichment of Mercedes to their detriment.

7                          **<u>RELIEF REQUESTED</u>**

8          295.   Plaintiffs, on behalf of themselves, and all others similarly

9    situated, request the Court to enter judgment against Mercedes, as follows:

10         a.     an order certifying the proposed Classes, designating Plaintiffs

11   as named representatives of their respective Classes, and designating the

12   undersigned as Class Counsel;

13         b.     a declaration that the HVAC Systems in Class Vehicles are

14   defective;

15         c.     a declaration that Mercedes is financially responsible for

16   notifying all Class Members about the defective nature of the Class Vehicles;

17         d.     an order enjoining Mercedes from further deceptive distribution,

18   sales, and lease practices with respect to the Class Vehicles, and to permanently

19   repair the Class Vehicles so that they no longer possess the HVAC System Defect;

20         e.     an award to Plaintiffs and Class Members of compensatory,

21   exemplary, and statutory damages, including interest, in an amount to be proven at

22   trial;

23         f.     a declaration that Mercedes must disgorge, for the benefit of

24   Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the

25   sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class

26   Members;

27         g.     an award of attorneys' fees and costs, as allowed by law;

28

h.     an award of pre-judgment and post-judgment interest, as provided by law;

i.     leave to amend this Complaint to conform to the evidence produced at trial; and

j.     such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

296.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury of any and all issues in this action so triable of right.

Dated: May 9, 2016                    Respectfully submitted,


By: _____
       Jonathan D. Selbin

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:   (415) 956-1000
Facsimile:    (415) 956-1008

Annika K. Martin (*pro hac vice* pending)
akmartin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:   (212) 355-9500
Facsimile:    (212) 355-9592

Ketan A. Patel (*pro hac vice* pending)
kp@personalinjury-ga.com
CORPUS LAW PATEL, LLC
PO BOX 1022
Atlanta, Georgia 30290
Telephone:   (678) 597-8020
Facsimile:    (678) 826-4700

*Attorneys for Plaintiffs and the Proposed Classes*