Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Facsimile: 415-956-1008

[Additional attorneys listed on signature page]

*Attorneys for Plaintiffs and the proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MANAN BHATT and MARY BLASCO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG;<br><br>Defendants. | **Case No. 16-3171**<br><br>**AMENDED CLASS ACTION COMPLAINT[1]**<br><br>for**:**<br><br>(1) Violations of California Consumer Legal Remedies Act<br>(2) Violations of California Unfair Competition Law<br>(3) Breach of Express Warranty Pursuant to Song-Beverly Consumer Warranty Act<br>(4) Breach of Express Warranty<br>(5) Breach of Express Warranty – Magnuson-Moss Warranty Act<br>(6) Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act<br>(7) Breach of Implied Warranty<br>(8) Breach of Implied Warranty – Magnuson-Moss Warranty Act<br>(9) Fraud by Concealment<br>(10) Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

---

[1] This amended complaint is filed pursuant to the parties' Stipulation Extending Time to Respond to Complaint [Dkt. 43] and the Court's order granting that stipulation [Dkt. 44].

## INTRODUCTION

1.     Plaintiffs Manan Bhatt and Mary Blasco bring this action for themselves and on behalf of all persons who purchased or leased in California certain vehicles equipped with uniform and uniformly defective HVAC Systems designed, manufactured, distributed, and sold/leased by Mercedes-Benz USA, LLC; Daimler AG; and/or their related subsidiaries or affiliates ("Mercedes"); as further described below ("Class Members").

2.     The vehicles at issue in this action include the 2004-2012 Mercedes A-Class, 2001-2017 Mercedes C-Class, 2000-2014 Mercedes CL-Class, 2013-2017 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2017 Mercedes CLS-Class, 2003-2016 Mercedes E-Class, 2007-2017 Mercedes GL-Class, 2010-2016 Mercedes GLK-Class, 2006-2016 Mercedes M-Class, 2017 Mercedes GLE-Class, 2006-2015 Mercedes R-Class, 1999-2017 Mercedes S-Class, 2003-2012 Mercedes SL-Class, 2004-2016 Mercedes SLK-Class, and 2002-2013 Maybach 57 and 62 (the "Class Vehicles").

3.     This action is brought to remedy violations of law in connection with Mercedes's design, manufacture, marketing, advertising, selling/leasing, warranting, and servicing of the Class Vehicles. These Class Vehicles' heating, ventilating, and air conditioning systems ("HVAC Systems") have a serious design defect that causes the HVAC Systems to (a) accumulate mold and mildew residue or growth within the HVAC System; (b) emit a moldy or mildewy odor that permeates the Vehicle cabin when the HVAC system is activated; and (c) cause the Vehicle's passenger cabin to be unbearable and thus unusable for its intended purpose.

4.     On information and belief, the HVAC System is substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the HVAC Systems in all Class Vehicles are made up of substantially the same components (evaporator, evaporator housing, ducting, fan, filter, drain lines, etc.),

and all employ the same general mechanism to deliver ventilation, heating, and cooling to the passenger cabin.

5. Because of its faulty design, during normal and expected conditions the HVAC System fails to properly evaporate or drain the condensation that accumulates within the System, creating a moist, hospitable environment for the growth of bacteria, fungus, mold, and spores, which then are blown into the passenger cabin when the HVAC System is in use (the "HVAC System Defect"). The mold-carrying air has a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

6. The moldy, smelly air emitted by the defective HVAC System is not a one-time event in the Class Vehicles – Class Members report it occurs every time the HVAC System is turned on, and is especially pervasive in humid weather or after it has rained.

7. When Plaintiffs and Class Members complain to Mercedes about the HVAC System Defect, Mercedes's only "solutions" are replacement of the cabin air filter or "flushing the system,"[2] both of which are temporary and do not address the defective HVAC System design, and thus are not permanent fixes for the Defect. What is worse, Mercedes made Class Members pay out-of-pocket for these temporary "fixes" for the HVAC System Defect even if Class Members' Vehicles remained under warranty at the time.

8. The HVAC System Defect inhibits Class Members' proper and comfortable use of their Vehicles, and requires Class Members to pay for repeated temporary fixes like replacements of the cabin air filter and/or "flushing" of the HVAC System.

---

[2] "Flushing the system" consists of partially disassembling the dashboard and drilling a hole into the HVAC System and applying a disinfecting solution to the evaporator coil.

9.     On information and belief, prior to the manufacture and sale or lease of the Vehicles at issue, Mercedes knew of the HVAC System Defect through sources such as pre-release evaluation and testing; arbitration actions; repair data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes dealers; and other internal sources. Yet despite this knowledge, Mercedes failed to disclose and actively concealed the HVAC System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as "sophisticated," "comfortable," and "state-of-the-art" vehicles, which they are not.

10.     Mercedes knew or should have known that the "fixes" it charged Class Members for to "remedy" the HVAC System Defect – such as replacing the cabin air filter or "flushing the system" – are not permanent solutions for the Defect.

11.     Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the costs of its temporary "fixes."

12.     As a result of Mercedes's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, including that the Class Vehicles contain defective HVAC Systems, have manifested, and continue to manifest, the HVAC System Defect, and that Mercedes has not provided a permanent remedy for this Defect. Furthermore, Plaintiffs and Class Members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC System Defect.

## **PARTIES**

*Plaintiff Manan Bhatt*

13.  Plaintiff Manan Bhatt resides in Torrance, California.

14.  Mr. Bhatt owns a 2010 Mercedes C300W Sports Sedan, which he purchased on August 25, 2013, as a Mercedes Certified Pre-Owned vehicle from Alfano Motorcars, Inc., in San Luis Obispo, California. Mr. Bhatt's Class Vehicle was designed, manufactured, distributed, advertised, marketed, warranted, and certified by Mercedes, and bears the Vehicle Identification No. WDDGF5EBOAF366596.

15.  Mr. Bhatt purchased his Class Vehicle for his personal, family, and household use.

16.  Before purchasing the Vehicle, Mr. Bhatt reviewed the Vehicle's ownership history and reported structural and equipment damage through the website carfax.com. The report indicated no issues or reported recalls.

17.  Mr. Bhatt purchased a Certified Pre-Owned warranty from Mercedes for $2295.00. Mr. Bhatt's Vehicle remained under warranty throughout the relevant period described herein, during which Mercedes refused to permanently repair or replace his defective HVAC System.

18.  Mr. Bhatt experienced a noxious odor caused by the HVAC System Defect less than a week after he purchased the Vehicle.

19.  After the incident, Mr. Bhatt notified his selling dealer, Alfano Motorcars, by phone about the foul moldy smell. The selling dealer suggested that Mr. Bhatt take the car to a closer Mercedes dealer since Alfano Motorcars is approximately 200 miles from Mr. Bhatt's residence. Mr. Bhatt called Mercedes-Benz of South Bay, in Torrance, California, and explained the problem. The dealer told Mr. Bhatt that any repair of the HVAC System would not be covered by warranty until the Vehicle was eligible for its first service under warranty, which was in May 2014, approximately one year later.

20.     From approximately a week after his purchase when the smell originated, to his first service visit in May 2014, some eight months later, Mr. Bhatt dealt constantly with foul and unpleasant odors in his newly acquired Class Vehicle. In an attempt to make the passenger cabin bearable so as to be able to drive and use his vehicle, Mr. Bhatt would air out the Vehicle prior to driving it by opening its windows, purchased and sprayed air freshener at a cost of approximately $20.00 each, into the Vehicle each time he entered it.

21.     In May 2014, Mr. Bhatt took the vehicle to Mercedes-Benz of South Bay in Torrance, California.

22.     Mr. Bhatt explained the continuing smell to the Mercedes dealer who proceeded to replace the cabin air filter at a cost of approximately $56.75 plus labor to Mr. Bhatt. Although Mr. Bhatt reasonably believed that the repair would be covered under the warranty he purchased, the Mercedes dealer claimed that the filter needed replacing due to "wear and tear" that exceeded the warranty. Mr. Bhatt disputed the dealer's claim that he had in any way contributed to or caused the odor, but the dealer offered Mr. Bhatt no other means of alleviating the foul odor.

23.     Mr. Bhatt was advised to turn off the HVAC System prior to arrival to his destination to try to eradicate the odor, which he did.

24.     The moldy odor disappeared after the service visit but returned in December 2014.

25.     Mr. Bhatt again complained of the smell to Mercedes-Benz of South Bay. The dealer offered Mr. Bhatt two temporary "fixes" for the problem at Mr. Bhatt's expense: (1) replace the air cabin filter again for approximately $58 in parts or (2) perform a complete "flush" of the HVAC System for approximately $360 in parts and labor.

26.     As Mr. Bhatt's parents were visiting the next week, he felt he had no choice but to accept another temporary "fix" and therefore chose to have the cabin air filter replaced at a cost of $57.65 plus tax to him.

1          27.    In February 2015, Mr. Bhatt lodged an official complaint about

2 the foul moldy smell while he was at Mercedes-Benz of South Bay. A Mercedes

3 representative called Mr. Bhatt to discuss the complaint within two weeks of the

4 date of his last service. The representative explained to Mr. Bhatt that Mercedes

5 cannot provide the replacement cabin air filter for free because, "There is no

6 official recall for this part from Mercedes-Benz manufacturing location.

7 Unfortunately, we cannot provide you with the free parts or labor." However, as a

8 good faith gesture the representative added a complimentary cabin air filter

9 replacement to Mr. Bhatt's account so that Mr. Bhatt would not be charged for the

10 next replacement when the moldy odor returns. The representative claimed that the

11 warranty did not cover Mr. Bhatt's previous cabin air filter replacements because

12 those replacements were needed due to excessive "wear and tear" caused by Mr.

13 Bhatt.

14          28.    On or about February 6, 2016, Mr. Bhatt had his cabin filter

15 changed by Mercedes-Benz of South Bay due to severe foul odor which was

16 covered by a "one time good[will] gesture."

17          29.    Approximately one month after this filter change in Mr. Bhatt's

18 Class Vehicle, the foul odor returned.

19          30.    To date, Mr. Bhatt has paid approximately $194.47 out of

20 pocket for temporary "fixes" for the HVAC System Defect.

21          31.    Mr. Bhatt expected his Class Vehicle to be of good and

22 merchantable quality and not defective. He had no reason to know of, or expect,

23 that mold would develop in his Vehicle's HVAC System, nor was he aware from

24 any source prior to purchase of the unexpected, extraordinary, and costly

25 maintenance steps Mercedes suggests are necessary to reduce mold growth. Had he

26 known these facts, he would not have bought his Class Vehicle or would have paid

27 less for it.

28

32.     Mr. Bhatt regularly saw advertisements for Mercedes vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes C300W Sports Sedan in 2013. Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his Class Vehicle, he does recall that state-of-the-art engineering and a comfortable interior were frequent themes across the advertisements he saw. Those advertisements about state-of-the-art engineering and a comfortable interior influenced his decision to purchase his Vehicle. Had those advertisements or any other Mercedes materials disclosed to Mr. Bhatt that the Class Vehicles had defective HVAC Systems, or that he would have to pay for repairs/replacement of the HVAC System, he would not have purchased his Class Vehicle, or would have paid less for it.

*Plaintiff Mary Blasco*

33.     Plaintiff Mary Blasco resides in Ontario, California.

34.     Mrs. Blasco owns a 2016 Mercedes GLC300, which she purchased new on January 24, 2016, from Mercedes Benz of Ontario in Ontario, California.

35.     Mrs. Blasco's Class Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification No. WDC0G4JB9GF040808.

36.     Mrs. Blasco purchased her Class Vehicle primarily for her personal, family, and household use.

37.     Mrs. Blasco expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that mold would develop in her Vehicle's HVAC System, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Mercedes suggests are necessary to prevent the development of mold. Had she

1  known these facts, she would not have bought her Class Vehicle or would have

2  paid less for it.

3          38.   Mrs. Blasco first experienced a noxious odor caused by the

4  HVAC System a few months after its purchase.

5          39.   Since that time, the noxious odor has continued unabated. The

6  HVAC System emits the odor when the Vehicle's climate control system is first

7  engaged and generally persists and is worse in the summer.

8          40.   The strength of the odor intensifies after usage of the HVAC

9  System.

10         41.   Mrs. Blasco brought her concerns regarding a strong sour/moldy

11 smell in her Vehicle to her selling dealer's service department in June 2016, and

12 was told that she must pay for a HVAC System service and cleaning. Mrs. Blasco

13 refused to pay for the service. The dealer conducted a complimentary "one time"

14 cleaning.

15         42.   The servicing dealer installed air fresheners throughout the

16 interior of the Vehicle in an attempt to abate or mask the odor.  Mrs. Blasco would

17 find air fresheners hidden in the interior of the Vehicle after it was serviced.

18         43.   Despite the cleaning, the odor persisted and Mrs. Blasco's Class

19 Vehicle was brought in to her selling dealer's service department in Spring 2017

20 with an odor complaint. The dealer advised that there would be a charge for the

21 cleaning, and again, Mrs. Blasco refused. Another complimentary cleaning was

22 conducted. The foul and noxious odor returned shortly thereafter.

23         44.    Mrs. Blasco regularly saw advertisements for Mercedes

24 vehicles on television, in magazines, on billboards, in brochures at the dealership,

25 and on the Internet during the years before she purchased her Mercedes GLC300 in

26 2016. Although she does not recall the specifics of the many Mercedes

27 advertisements she saw before she purchased her class vehicle, she does recall that

28 state-of-the-art engineering and a comfortable interior were frequent themes across

1   the advertisements she saw. Those advertisements about state-of-the-art engineering

2   and a comfortable interior influenced her decision to purchase her vehicle. Had

3   those advertisements or any other Mercedes materials disclosed to Mrs. Blasco that

4   the Class Vehicles had defective HVAC Systems, or that she would have to pay for

5   repairs/replacement of the HVAC System, she would not have purchased her Class

6   Vehicle, or would have paid less for it.

7           *Defendant Mercedes-Benz USA, LLC*

8           45.   Defendant Mercedes-Benz USA, LLC ("MBUSA") is a

9   Delaware corporation with its principal place of business in Atlanta, Georgia.

10          46.   Prior to July 2015, MBUSA's principal place of business was in

11  Montvale, New Jersey.

12          47.   MBUSA is a wholly owned subsidiary of Daimler.

13          48.   At all times relevant herein, MBUSA has been and has acted as

14  an agent of Daimler and subject to Daimler's control.

15          49.   At all times relevant herein, MBUSA (itself and through its

16  related entities) engaged in the business of marketing, warranting, distributing,

17  selling, leasing, and servicing automobiles designed and manufactured by Daimler,

18  including the Class Vehicles, in California and throughout the United States.

19          *Defendant Daimler AG*

20          50.   Defendant Daimler AG ("Daimler") is a German corporation

21  with its principal place of business in Stuttgart, Germany.

22          51.   At all times relevant herein, Daimler (itself and through its

23  related entities) engaged in the business of designing and manufacturing the Class

24  Vehicles.

25          52.   According to MBUSA's counsel, Daimler was solely

26  responsible for designing the Class Vehicles, including their defective HVAC

27  Systems; therefore Daimler is an essential party to this action concerning a design

28  defect in the Class Vehicles' HVAC Systems.

53.     Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC System Defect.

54.     Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles.  It established MBUSA as its wholly-owned subsidiary company.  It named MBUSA with its official "Mercedes-Benz" title.  It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling and leasing "Mercedes-Benz" branded vehicles and providing related services.

55.     Based on the foregoing actions, representations, and omissions, Plaintiffs and Class Members justifiably relied on MBUSA's representations regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of defective Class Vehicles.

## **JURISDICTION**

*Subject-matter jurisdiction*

56.     This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

57.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other Class Members are citizens of different states than Defendants.

1    *Personal jurisdiction: MBUSA*

2           58.    This Court has personal jurisdiction over MBUSA because

3    MBUSA is authorized to do business in this District, conducts substantial business

4    in this District, and some of the actions giving rise to this Complaint took place in

5    this District. Each of these facts independently, but also all of these facts together,

6    are sufficient to render the exercise of jurisdiction by this Court over MBUSA

7    permissible under traditional notions of fair play and substantial justice.

8    *Personal jurisdiction: Daimler*

9           59.    This Court has personal jurisdiction over Daimler because

10   Daimler has continuous and systematic general business contacts in this District.

11          60.    By using MBUSA as its channel for marketing, distributing,

12   warranting, selling, and leasing the Daimler-designed Class Vehicles in this District

13   and the United States, Daimler itself has deliberately taken affirmative steps to

14   make Daimler-designed vehicles available to consumers in this District and the rest

15   of California, including Plaintiffs and Class Members; created continuing

16   obligations between Daimler and residents of this District; and purposefully availed

17   itself of the benefits and protections of conducting business in this District and

18   California generally.

19          61.    Daimler employees and representatives regularly visit Daimler

20   subsidiaries located in this District, thereby continuously conducting business in

21   this District and California generally. For example, Mercedes's North American

22   research headquarters is in California. And, in total, California is home to three of

23   five of Mercedes's North American research facilities. Besides the research

24   headquarters in Sunnyvale, Mercedes has California facilities in Long Beach and

25   Carlsbad. Daimler regularly conducts business in California thought its visits to

26   these California subsidiaries.

27

28

62. Further, Daimler's wholly owned subsidiary and agent MBUSA has substantial and consistent contacts in this District, as described above, and as Daimler's agent MBUSA's contacts in this District can be attributed to Daimler.

63. Finally, Plaintiffs' claims here arise out of Daimler's contacts with this District, particularly in that Plaintiffs could not even have purchased or leased their Class Vehicles if not for Daimler's intentional acts of designing the Class Vehicles (including their defective HVAC Systems) and exporting them for sale to customers in this District and the rest of California, including Plaintiffs and Class Members.

64. These constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

## VENUE

65. Venue is proper in this District under 28 U.S.C. § 1391 because Mercedes is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, Mercedes transacts business within this District, and some of the events establishing the claims at issue here arose in this District.

66. Plaintiffs' venue declarations pursuant to Cal. Civ. Code § 1780(d) are attached hereto as Exhibits A and B.

## APPLICABLE LAW

67. Plaintiffs and all Class Members purchased or leased their Class Vehicles in California, and seek damages and equitable relief for themselves and all Class Members under California law.

68. California has a materially greater interest than any other state in enforcing the rights and remedies granted to consumers under the California laws invoked in this Complaint. These rights and remedies further the strong fundamental public policies of the State of California.

**FACTUAL ALLEGATIONS**

69.     Plaintiffs are informed and believe that, because of the HVAC System Defect, the HVAC Systems in the Class Vehicles are predisposed to foster mold growth and produce a moldy odor under normal-use conditions that would not cause non-defective HVAC Systems to produce a moldy odor, compromising the comfort and enjoyment of vehicle occupants, including Class Members, and requiring them to pay for repeated temporary "fixes" including replacements of the cabin air filter and "flushing the system" with disinfectant spray or foam.

70.     The diagram below illustrates the components and air flow of the HVAC systems:



| 1 | Dust filter | D | Blended air |
|---|---|---|---|
| 3 | Evaporator | M2/5 | Fresh air/recirculated air flaps actuator motor |
| 4 | Heater core | M2/6 | Left blended air flap actuator |
| A | Fresh air or recirculated air | M2/7 | Right blended air flap actuator |
| A32m1 | Blower motor | M2/15 | Left and right foot well flaps actuator |
| B | Cooled air | M2/16 | Left and right defroster flaps actuator |
| C | Heated air | M2/21 | Fresh air flaps actuator |

71.     As a vehicle's HVAC system cools air, condensation forms on a component called an evaporator (labeled 3 in the diagram above). In a non-defective system, this condensation is evaporated through the activation of a fan and via airflow over the evaporator.

72.     On information and belief, condensation that builds on the evaporator and elsewhere within the Class Vehicles' HVAC Systems is never properly and fully evaporated. This residual moisture provides a haven for the growth of mold and mildew as spores enter the System through outside vents.

73.     Based on preliminary investigation and inspection, due to the Defect, several mold species, including Aspergillus/Pencillium, Ascospores, and Smut/Periconia/Myxomy, are present in the evaporators of the Class Vehicles. Said molds are known to secrete odorous mycotoxins such as Patulin, creating and contributing to the foul odors experienced by Plaintiffs and Class Members.

74.     Mycotoxins are toxic to humans and animals and are known to cause some or all of the following: allergic reactions, infections, cellular damage, DNA damage, interference with RNA synthesis, inflammation, gastroenteritis, and other harmful effects.

75.     Mercedes knew or should have known that having a damp, poorly draining HVAC System component that could promote the growth of mold could result in or at least exacerbate reactions, diseases, symptoms, or complications in occupants of the Class Vehicles, presenting a risk to their health and safety, especially when the mold growth is in the airway to a tightly sealed and enclosed space containing one or more human beings and animals.

76.     Over time, the mold/mildew/fungus growing in the evaporator can spread, resulting in reduced HVAC System efficiency, while also becoming more difficult to remove and requiring evaporator replacement in some instances.

77.     Moreover, the tightly sealed and enclosed Vehicle passenger compartment can cause concentration levels of toxic smells and chemicals to become much higher than they would in larger and less tightly sealed spaces.

78.     Replacing the cabin air filter is not a fix for the Defect because the filter is "upstream" from the evaporator.

79.     Flushing the system is not a permanent fix for the Defect because it simply temporarily reduces mold growth but does not eliminate the cause.

**A.      Mercedes Knew of the HVAC System Defect Prior to Sale or Lease of the Class Vehicles**

80.     On information and belief, Mercedes learned of the HVAC System Defect at least as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; arbitration actions; repair data; replacement part sales data; early consumer complaints made directly to Mercedes, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

**B.      Mercedes's Knowledge of the HVAC System Defect Gained from Pre-Release Design, Manufacture, Engineering, and Testing Data**

81.     During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Mercedes necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's HVAC Systems, particularly the basic engineering principles behind the construction and function of the Systems and the expected conditions and uses the Systems would encounter in ordinary customer service.

82.     An adequate pre-release analysis of the design, engineering, and manufacture of the HVAC Systems in the Class Vehicles would have revealed to Mercedes that the HVAC Systems were defective and would foster the growth of

mold and other biological agents and therefore introduce moldy air into the passenger cabin.

### C.   Mercedes Was Directly Made Aware of the Defect Via a Successful Consumer Arbitration Action Brought Against It

83.    Mercedes learned of the HVAC System Defect at least as early as 2008, when a Class Vehicle owner brought – and won – a consumer arbitration action against Mercedes for the Defect. Plaintiffs were not aware of this arbitration action at the time they purchased their Class Vehicles.

84.    The following is a synopsis of the Florida Consumer Complaint and Arbitration decision rendered against Mercedes in *Fattah v. Mercedes-Benz USA, Inc.*, 2008-0441/MIA (Fla. NMVAB November 14, 2008):

> The Consumer complained of a foul musty odor coming from the air conditioner vents in her 2007 Mercedes C230. The Consumer testified that the severity of the odor had reduced; however, the odor still existed. The Manufacturer contended that the alleged defect did not substantially impair the use, value or safety of the vehicle. While not denying the existence of the odor, the Manufacturer asserted that outside elements and humid South Florida temperatures contributed to the odor. The Board rejected the Manufacturer's argument and found that the odor substantially impaired the use, value and safety of the vehicle. Accordingly, the Consumer was awarded a refund.[3]

85.    During the arbitration hearing, Mercedes was represented by its counsel, a MBUSA representative out of the Montvale, NJ, headquarters, a MBUSA Technical Specialist for the South Florida region, and the Service Manager at the dealership the consumer had visited complaining about the odor.

---

[3] Office of the Florida Attorney General, Florida New Motor Vehicle Arbitration Board Quarterly Case Summary for 4th Quarter (October 2008 - December 2008), *available at* http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7SAJZG/$file/Oct-Dec08.pdf.

86.     Mercedes described the HVAC System Defect during the hearing: "The system works in such a way that it will – the AC is supposed to get rid of all the humidity from the air, ok? And in some cases, you know, where you shut the car off, some water will remain in the evaporator … what happens is it will accumulate there. It will not fully drain." Mercedes went on to say that the water that accumulates is what ultimately leads to the moldy odor.

87.     Under questioning from the Arbitration Board, Mercedes admitted that as long as the consumer kept the car, she would have to repeatedly get Mercedes's temporary "fix," which one Board member called "a band-aid."

88.     During deliberation, the Board found:

The issue with the vehicle is that it's got a musty smell, Mercedes knows about it, they have a technical service bulletin to address it, so apparently they've had enough complaints on this where it rose to the level of having to deal with it.  The way they deal with it is they use the disinfectant to clean, and if you read the TSB, you've got to get in there and make sure you clean the whole evaporator as much as possible …  Mercedes has admitted that, yeah, there is a problem, that this is the best they know how to fix it. … So nothing that they've done has made the smell completely disappear.

…

You know, that's one way to look at it in terms of how strong the odor is. Another way to look at it is that the cure doesn't work.  And this is going to be with her and the vehicle for as long as she has the vehicle.  That's the way it looks, because she's coming back in and that's why I was questioning him, because I wanted to see if they found the problem and here's the solution to the problem.  There is no real solution.  In other words, they haven't come up with anything to say, I mean, change this and there's not going to be anymore accumulation of water and, in fact, in other models, from what he's saying,

they don't have that problem because whatever the engineering is, it prevents it. And on this model, it's not there. So, you know, it's sort of like a defect, which they are trying to deal with, and they can't really deal with it in all the cases.

…

there's really not a fix for the vehicle. And there shouldn't be a smell to the vehicle. This is a vehicle that, to me, the fact that the smell persists is substantial in itself. I think that this is a substantial problem that this vehicle has with this smell. It's not going to go away. There's nothing you can do that's going to say we're going to eliminate the smell in this car. It's just not gonna happen. There's no remedy to get rid of the smell, period. … And I have a problem with that. … it's just a design problem issue.

89.     Mercedes clearly knew or should have known of the HVAC System Defect from at least as early as this arbitration hearing in 2008.

**D.     Mercedes's Knowledge of the HVAC System Defect from Dealer Technical Bulletins**

90.     Mercedes's knowledge of the HVAC System Defect is demonstrated by Dealer Technical Bulletins issued by Mercedes concerning the Defect.

91.     Upon information and belief, Mercedes issued Dealer Technical Bulletins to its dealerships and service centers describing the HVAC System Defect (or the moldy smell consumers were complaining about) and informing service technicians of the temporary "fixes" Mercedes was offering.

**E.     Mercedes's Knowledge of the HVAC System Defect from Repair Data**

92.     Mercedes also knew or should have known about the HVAC System Defect because of the large number of HVAC System repairs and cabin air filter replacements made during the Class Vehicles' warranty periods.

93.     Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs.[4] Complete data on such repairs is exclusively within Mercedes's control and unavailable to Plaintiffs without discovery.

### F.     Mercedes's Knowledge of the HVAC System Defect Gathered from the Large Number of Replacement Cabin Air Filters Ordered from Mercedes

94.     Upon information and belief, Mercedes also knew or should have known about the HVAC System Defect because of the higher than expected number of replacement cabin air filters ordered from Mercedes, which should have alerted Mercedes that this was a Defect affecting a wide range of its vehicles.

95.     Upon information and belief, Mercedes service centers use Mercedes replacement parts that they order directly from Mercedes. Therefore Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement cabin air filters. The ongoing high sales of replacement cabin air filters was (or should have been) known to Mercedes, and alerted Mercedes that its HVAC Systems were defective and causing Class Vehicles' HVAC Systems to emit moldy odors frequently and consistently.

### G.     Mercedes's Knowledge of the HVAC System Defect Gained from Class Member Complaints Made Directly to Mercedes

96.     Mercedes also knew or should have known about the HVAC System Defect because numerous consumer complaints regarding failures of the HVAC System were made directly to Mercedes. The large number of complaints, and the consistency of their descriptions of the HVAC System Defect, the mold

---

[4] For example, in the *Fattah* arbitration hearing, Mercedes-Benz counsel testified that Mercedes received a "motor vehicle defect notification" after at least three repairs for the HVAC System odor.

formation, and the foul, noxious odors it caused in the Class Vehicles, should have alerted Mercedes to this serious Defect affecting a wide range of its vehicles.

97.    The full universe of complaints made directly to Mercedes about the HVAC System Defect is information presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery. However, on information and belief, many Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the repeated HVAC System failures their Vehicles experienced. For example, some instances of these direct-to-Mercedes complaints are described in Class Vehicle owners' complaints logged with NHTSA ODI and posted on online vehicle owner forums:[5]

•      "I am going to start this by copying the information that I sent to the Nevada DMW and to Mercedes corporate as well as the dealership. Mercedes WILL NOT respond to our complaints and neither will the dealership. Here is a background on this terrible car that is a big waste of money! We purchased the vehicle on December 3, 2011. … On May 2, 2012, with 4,280 miles on the vehicle, we brought it in because of a terrible moldy, wet smell coming from the air vents. The air filter was removed, replaced and was put into the blowers. The AC system was also revitalized. The smell came back within two days. The dealership did not fix this problem." Forum.edmunds.com (posted February 2013).

•      "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly use this car, it stinks and bothers my breathing." Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

_____

[5] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

-     Took my 09 C300 in to MB for a moldy smell. Wife just called and said they want $155.00. Car has 24,000 on it. Question shouldn't this be covered under warranty?" http://www.benzworld.org/forums/ (posted on March 2011)

-     "I have a 2006 E350 that has developed a noticeable musty/mold smell emitting from the a/c system. Car is under warranty, dealership is just changing parts in hopes of stumbling across the problem. To date they have changed the cabin air filter and done the service bulletin on system clean-out, replaced the condenser …. Anyway, now I notice a distinct mold smell coming from the front, outside area of the car when it's parked in the garage. I have been on my knees crawling all around the car and cannot nail the source. The dealership service writer is useless as I probably could leave a voicemail for the mechanic and probably do better. Car always garaged in Palm Beach area. Any clues? Thanks." peachparts.com (posted April 2007).

       98.    As the above sampling of complaints shows, Class Members have been vocal in complaining directly to Mercedes about the HVAC System Defect, and the number and consistency of their complaints should have alerted Mercedes about the HVAC System Defect.

**H.**    **Mercedes's Knowledge of the HVAC System Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations**

       99.    In addition to complaints made directly to Mercedes, many Class Vehicle owners and lessees lodged complaints about the HVAC System Defect with NHTSA ODI, beginning as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

       100.    Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure

of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

101.   Thus automakers should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles, including design-related defects, such as failures of HVAC Systems to emit mold- and odor-free air as intended.

102.   From its monitoring of the NHTSA databases, Mercedes knew or should have known of the many complaints about HVAC System Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Mercedes to the HVAC System Defect.

103.   NHTSA's publicly available ODI database only contains complaints made in the past five years; thus complaints made before 2012 are not readily accessible. Mercedes, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery. A sampling of the publicly available complaints lodged with NHTSA ODI, however, includes those quoted above, as well as the following:

• "Molds and mildew build up in the air condition ducts placing people who are susceptible for infection (people with weak immune system) at risk for fatal infection. The dealer stated that this is a known and common condition for this car because the AC box does not drain the condensed water. This is because the way the car was designed. The dealer recommended turning off the AC for 30 seconds while keeping just the fan on every time before turning off the car to dry up the condensed water on the AC coils, not practical. The dealer has a known service to disinfect the AC system but because of the car design could not guarantee that the condition will not return. There is no warning or any instructions in the manual

regarding this potentially fatal condition for susceptible people." Complaint in NHTSA ODI database, ODI ID No. 1065573, date of incident July 12, 2014.

• "My car smells like mildew and moldy. I have taken it to the dealer about 3 times about this situation. I have respiratory problems and allergies and I can hardly use this car, it stinks and bothers my breathing." Complaint in NHTSA ODI database, ODI ID No. 10342816, date of incident October 28, 2008.

104.   As the above sampling of complaints makes clear, Class Members have been vocal in complaining to NHTSA ODI about the HVAC System Defect since at least 2008, and Mercedes was, or should have been, aware of and monitoring those complaints, and thus should have known about the HVAC System Defect since at least 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

**I.     Mercedes's Knowledge of the HVAC System Defect Gleaned from Class Member Complaints on Public Online Forums**

105.   In addition to complaints made directly to Mercedes and collected by NHTSA ODI, many Class Vehicle owners and lessees posted complaints about the HVAC System Defect on public online vehicle owner forums. The following is a small sampling of such complaints:

• "Definitely a strong odor coming from the HVAC system that makes it a little embarrassing to have others ride along in your "luxury" automobile. Any advice on how to completely correct this would be appreciated." www.repairpal.com

• "Crayon type smell in the HVAC system that is so pungent that the wife can't even stand to be in the car." www.repairpal.com

• "I have noticed a very bad or mushy smell when I start my car with A/C off (after I have shut the car for sometime and the AC was running when I shut the

car). This gets better in 10-15 seconds after I turn the AC on. The smell is a very strong smell of moisture with stangnant air.... Does anyone have the same experience? I am worried as it might be a problem with my cabin air filter. My car is only 3000miles on it. Thanks" http://mbworld.org/forums/ (posted on March 2012).

- "Whenever I turn the air on, the first 30 seconds it smells really bad, I have to open the windows till it clears out. I checked all the filters already. Any idea how can I make it smell nice/normal?? thnx alot,Lina." Answers.yahoo.com (posted 2007).

- "My wife complained that our 2014 S550 also had musty dirty socks smell 7 months after purchase. I confirmed the smell and my wife's multiple friends confirmed the "sour stinking socks smell". I took the car (S550) to the FJ Newport but they say unable to confirm the smell and told us to pick up the car. They also say that they don't have any known problem with 2014 S550 and further say that the advisor is told to not take the car in the shop unless they can verify the smell. I guess all dealer techs are very insensitive to smells. So we had to pick up the car and bring the car back home. We stopped driving the S550 for a while (weeks) until we are sure of mold free. Because both my wife and I have a certain genetic marker and also have compromised auto immune system and we cannot deal with any mold issue if there exists." Mbworld.org (posted December 2014)

- "My problem concerns a 2001 C320 with 60,000 miles. The climate control emits an extremely musty sour smell from the air vents when the vehicle is first started with the AC on. I presume the air ducts are clear of anything that might smell as the smell is absent when in the heat mode. I have wondered if the problem might be related to the AC charging system, receiver/drier, or a condensation drain tube etc. I know little or nothing about my MB AC. Any thoughts or advice are

appreciated before I start dismantling & throw parts at it." www.mbca.org (posted October 2004).

• "Visitor, 2006 Mercedes-Benz C230, 45,000 mi. Smelly mildew hvac." Forum repairpal.com/mildew-in-heater-box-403

• "The heating, ventilation and AC (HVAC) heater box is susceptible to mildew buildup. This can result in a musty odor from the HVAC system, most noticeable when the system is first turned on." Forum repairpal.com/mildew-in-heater-box-403

• "We just dropped our 2015 ML 350 off at the dealership due to an extreme vinegar emis[s]ion from the AC. The tech said it will be $330 to clean/flush and replace the filter as this issue is NOT covered under the bumper to bumper war[r]anty. It's a very common problem, apparently, as he gave us his very 'rehearsed' answer as to why this happens. (The condensation has nowhere to escape and becomes moldy). He suggested we park it on a slope and that we should turn off the AC 5 mins before we arrive at our destination! I don't think that we should have to babysit the AC in a luxury car! He also said that ALL luxury cars have this issue. Well, we've owned Audi's, BMW's and Lexus products all with NO AC issues. So I'm calling BS on Mercedes and I believe that they have known about this issue for years and should be including this service cost in the warranty. Plus, from what I've read this will happen often, it's not a 1 time fix." Bbenzworld.org (posted February 2016)

106.   As shown by this small sampling of complaints from vehicle owner forums consumers have been vocal in complaining about the HVAC System Defect and the moldy smell it causes. A multi-billion dollar automaker like Mercedes undoubtedly had and has a marketing department that tracks such sites

and should reasonably have been aware of the HVAC System Defect in the Class Vehicles.

107.   In sum, as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, Mercedes was aware of the HVAC System Defect, should have been aware of the HVAC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the HVAC System Defect, based on, among others, the following sources:

a.   Pre-release design, manufacturing, engineering, and testing data;

b.   Arbitration actions against Mercedes related to the Defect;

c.   Detailed data gathered by Mercedes about large number of HVAC System Defect repairs;

d.   Knowledge Mercedes had of the large number of replacement HVAC System parts ordered from Mercedes;

e.   Numerous and consistent consumer complaints made directly to Mercedes about the HVAC System Defect;

f.   Numerous and consistent consumer complaints collected by NHTSA ODI about the HVAC System Defect;

g.   Numerous and consistent consumer complaints made on online vehicle owner forums;

h.   Service bulletins sent by Mercedes to its dealerships evincing knowledge of ongoing issues with HVAC Systems in the Class Vehicles; and

i.   Mercedes service center employees' familiarity with and knowledge of the HVAC System Defect.

108.   Moreover, the large number and consistency of Class Member complaints describing the HVAC System Defect's propensity to cause a moldy odor underscores the fact that Class Members considered the HVAC System Defect to be a material issue to the reasonable consumer.

## **Applicable Warranties**

109.   Mercedes sold and leased the Class Vehicles with a written express warranty covering the Vehicles for 48 months or 50,000 miles.

110.   Mercedes expressly warranted in writing with respect to the Class Vehicles that it would "repair under warranty, without charge to you, *anything* that goes wrong with your vehicle during the warranty period which is *our fault*" (emphasis added).  In its written warranty, Mercedes distinguishes "defects"—for which Mercedes accepts responsibility—from "damage": "Defects are covered [by the warranty] since we, the distributor[,] are responsible. Conversely, we have no control over damage caused by such things as … collision, misuse, and … improper maintenance."

111.   Mercedes represents that its Certified Pre-Owned ("CPO") vehicles "are backed by one of the most comprehensive certified pre-owned warranties available." The program includes a warranty for 12 months or up to 100,000 total accumulated vehicle miles. Mercedes represents that its CPO vehicles are factory-backed and the extended warranty provides up to five years or 100,000 total vehicle accumulated miles of coverage. Both Mercedes's new vehicle Limited Warranty and Certified Pre-Owned Limited Warranty and Extended Warranty extend coverage to the climate control system, which includes the HVAC System.

112.   Mercedes provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicle is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

113.   Based on Plaintiffs' experiences and reports from other consumers, Mercedes refused to cover the temporary "fixes" (e.g. changing the filter and flushing the System) under warranty, and instead required Class Members pay out-of-pocket for these temporary "fixes" for the HVAC System Defect even if Class Members' Vehicles remained under warranty at the time.

**Mercedes's Marketing and Concealment**

114.   Upon information and belief, Mercedes knowingly designed, manufactured, and sold/leased the Class Vehicles with the HVAC System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles.

115.   Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

116.   Mercedes's marketing material describes the various Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

117.   Mercedes's marketing materials advertised the Vehicles as "enjoyable" to "everyone" and the HVAC System "filters dust and pollen as small as 0.0002" from the air. It also promoted videos stating its Vehicles are "engineering excellence" and "an automotive masterpiece." Furthermore, it stated, "Soothing. Standard dual-zone automatic climate control allows the driver and front passenger to enjoy individualized comfort in any season. The system filters dust and pollen from the cabin, while a sensor monitors the angle and intensity of sunlight for more even control of temperature." This led Plaintiffs and Class Members to form a reasonable belief and expectation that mold/mildew and foul smells from outside the Vehicle would not get into the cabin, and certainly caused the reasonable consumer not to expect that the Vehicle itself would harbor and facilitate the growth of organic materials regularly giving rise to foul odors making the use of Class Vehicles anything but soothing or enjoyable.

118.   Mercedes also touts "a rigorous 27-point service checklist to keep your Mercedes-Benz running effortlessly for the next 10,000," implying that Class Vehicles will require less-frequent maintenance than other vehicles. This 27-

1   point service checklist includes pre-road test checks of the air cleaner/filter and

2   HVAC System.

3          119.   Further, Mercedes represents that its Certified Pre-Owned

4   vehicles must "meet stringent criteria and pass a rigorous inspection." This

5   certification process involves a 164-point inspection, which includes a test of

6   "Automatic Climate Control Function, Regulation, Display, Odors." Mercedes

7   promises that CPO vehicle purchasers/lessees "get industry-leading coverage."

8          120.   According to its consumer brochures, "[t]he Mercedes-Benz

9   Certified Pre-Owned vehicle offers safety, performance and reliability." Vehicles

10   that have been Certified Pre-Owned purportedly have passed a thorough

11   certification inspection. According to its CPO consumer brochure, all Mercedes

12   CPO vehicles undergo a "climate control inspection" during a road test conducted

13   by a Mercedes-Benz technician and "[a]ny noted deficiencies are repaired, replaced

14   or reconditioned" before the vehicle is sold.

15          121.   In practice, the Class Vehicles are not as comfortable or

16   enjoyable as Mercedes's marketing suggests. Mercedes concealed the fact that the

17   so-called "Luxury" Class Vehicles, which supposedly are "the most advanced

18   vehicles on the road," are instead not even comfortable or enjoyable under ordinary

19   conditions because the HVAC Systems repeatedly and consistently emit foul moldy

20   odors into the passenger cabin.

21          122.   Mercedes marketed Class Vehicles and Mercedes Pre-Paid

22   Maintenance Plans with certain service intervals despite that it knew or should have

23   known that Class Vehicles could not and were not capable of lasting the stated

24   service intervals without exhibiting foul odors or smells.

25          123.   Plaintiffs and Class Members were exposed to Mercedes's long-

26   term, national, multimedia marketing campaign touting the supposed sophistication

27   and comfort of the Class Vehicles, and Class Members justifiably made their

28

decisions to purchase or lease their Class Vehicles based on Mercedes's misleading marketing that concealed the true, defective nature of the Class Vehicles.

124.   Further, Mercedes knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Mercedes has been aware of the HVAC System Defect since at least 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through pre-release evaluation and testing; arbitration actions; the high number of HVAC System repairs and replacement part sales; and the numerous and consistent complaints about the HVAC System Defect made directly to Mercedes, collected by NHTSA, and posted in public online forums.

125.   Despite Mercedes's knowledge of the Defect, Mercedes told Class Members who complained about the HVAC System Defect that Mercedes had never heard of the problem before and that no others had reported similar issues with their Vehicles' HVAC Systems.

126.   In sum, Mercedes has actively concealed the existence and nature of the HVAC System Defect from Class Members since at least 2008 despite its knowledge of the existence and pervasiveness of the HVAC System Defect. Specifically, Mercedes has:

a.   Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the HVAC System Defect;

b.   Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' HVAC Systems were defective and not fit for their intended purposes;

c.   Failed to disclose, and actively concealed, the fact that the Class Vehicles' HVAC Systems were defective, despite that Mercedes learned of the HVAC System Defect as early as 2008, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles;

1    d. Failed to disclose, and actively concealed, the existence and

2 pervasiveness of the HVAC System Defect even when directly asked about it by

3 Class Members during communications with Mercedes, Mercedes Customer Care,

4 Mercedes dealerships, and Mercedes service centers;

5    e. Actively concealed the HVAC System Defect by forcing Class

6 Members to bear the cost of temporary "fixes" while at the same time performing

7 those "fixes" at no (or lower) cost for those who complained vocally and often, and

8 calling these "goodwill" services; and

9    f. Actively concealed the HVAC System Defect by consistently

10 treating the mold and odors with temporary "fixes," so that the HVAC System

11 Defect is not permanently corrected in Class Members' vehicles, even though Class

12 Members were led to believe that the "fixes" had cured the moldy odor problem in

13 their Vehicles.

14    127. By engaging in the conduct described above, Mercedes has

15 concealed, and continues to conceal, the HVAC System Defect from Class

16 Members. If Class Members had had knowledge of the information Mercedes

17 concealed, they would not have purchased or leased the Class Vehicles or would

18 have paid less to do so.

19     **Fraudulent Concealment Allegations**

20    128. Absent discovery, Plaintiffs are unaware of, and unable through

21 reasonable investigation to obtain, the true names and identities of those individuals

22 at Mercedes responsible for disseminating false and misleading marketing materials

23 regarding the Class Vehicles. Mercedes necessarily is in possession of all of this

24 information. Plaintiffs' claims arise out of Mercedes's fraudulent concealment of

25 the HVAC System Defect and the foul moldy smells it causes, and its

26 representations about the world-class quality, sophistication, state-of-the-art

27 performance and comfort of the Class Vehicles. To the extent that Plaintiffs' claims

28 arise from Mercedes's fraudulent concealment, there is no one document or

1   communication, and no one interaction, upon which Plaintiffs base their claims.

2   Plaintiffs allege that at all relevant times, including specifically at the time they

3   purchased or leased their Class Vehicles, Mercedes knew, or was reckless in not

4   knowing, of the HVAC System Defect; Mercedes was under a duty to disclose the

5   Defect based upon its exclusive knowledge of it, and its concealment of it; and

6   Mercedes never disclosed the Defect to Plaintiffs or the public at any time or place

7   or in any manner.

8          129.   Plaintiffs make the following specific fraud allegations with as

9   much specificity as possible absent access to the information necessarily available

10  only to Mercedes:

11         a.   ***Who***: Mercedes actively concealed the HVAC System Defect

12  from Plaintiffs and Class Members while simultaneously touting the safety,

13  comfort, sophistication, and world-class quality of the Class Vehicles, as alleged in

14  paragraphs 114-127, above. Plaintiffs are unaware of, and therefore unable to

15  identify, the true names and identities of those specific individuals at Mercedes

16  responsible for such decisions.

17         b.   ***What***: Mercedes knew, or was reckless or negligent in not

18  knowing, that the Class Vehicles contain the HVAC System Defect, as alleged

19  above in paragraphs 80-108. Mercedes concealed the Defect and made

20  representations about the safety, comfort, sophistication, world-class quality, and

21  other attributes of the Class Vehicles, as specified above in paragraphs 114-127.

22         c.   ***When***: Mercedes concealed material information regarding the

23  Defect at all times and made representations about the world-class quality,

24  sophistication, state-of-the-art safety and comfort of the Class Vehicles, starting no

25  later than 2008, or at the subsequent introduction of certain models of Class

26  Vehicles to the market, continuing through the time of sale/lease, and on an

27  ongoing basis, and continuing to this day, as alleged above in paragraphs 114-127.

28  Mercedes still has not disclosed the truth about the Defect in the Class Vehicles to

1    anyone outside of Mercedes. Mercedes has never taken any action to inform

2    consumers about the true nature of the Defect in Class Vehicles. And when

3    consumers brought their Vehicles to Mercedes complaining of the foul moldy

4    odors, Mercedes denied any knowledge of or responsibility for the HVAC System

5    Defect, and in many instances, actually blamed the customer for causing the odor

6    problem.

7             d.      *Where*: Mercedes concealed material information regarding the

8    true nature of the Defect in every communication it had with Plaintiffs and Class

9    Members and made representations about the world-class quality, sophistication,

10   state-of-the-art safety, and comfort of the Class Vehicles. Plaintiffs are aware of no

11   document, communication, or other place or thing, in which Mercedes disclosed the

12   truth about the Defect in the Class Vehicles to anyone outside of Mercedes. Such

13   information is not adequately disclosed in any sales documents, displays,

14   advertisements, warranties, owner's manuals, or on Mercedes's website.

15            e.      *How*: Mercedes concealed the HVAC System Defect from

16   Plaintiffs and Class Members and made representations about the world-class

17   quality, sophistication, state-of-the-art safety, and comfort of the Class Vehicles.

18   Mercedes actively concealed the truth about the existence and nature of the Defect

19   from Plaintiffs and Class Members at all times, even though it knew about the

20   Defect and knew that information about the Defect would be important to a

21   reasonable consumer, and Mercedes promised in its marketing materials that Class

22   Vehicles have qualities that they do not have.

23            f.      *Why*: Mercedes actively concealed material information about

24   the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class

25   Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing

26   competitors' vehicles and made representations about the world-class quality,

27   sophistication, state-of-the-art safety, and comfort of the Class Vehicles. Had

28   Mercedes disclosed the truth, for example in its advertisements or other materials or

1  communications, Plaintiffs and Class Members (all reasonable consumers) would

2  have been aware of it, and would not have bought or leased the Class Vehicles or

3  would have paid less for them.

### TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

6      130.   Upon information and belief, Mercedes has known of the

7  HVAC System Defect in the Class Vehicles since at least 2008, and certainly well

8  before Plaintiffs and Class Members purchased or leased their Class Vehicles, and

9  yet has concealed from or failed to notify Plaintiffs, Class Members, and the public

10  of the full and complete nature of the HVAC System Defect, even when directly

11  asked about it by Class Members during communications with Mercedes, Mercedes

12  Customer Care, Mercedes dealerships, and Mercedes service centers. Mercedes

13  continues to conceal the Defect to this day.

14      131.   Any applicable statute of limitation has been tolled by

15  Mercedes's knowledge, active concealment, and denial of the facts alleged herein,

16  which behavior is ongoing.

### Estoppel

18      132.   Mercedes was and is under a continuous duty to disclose to

19  Plaintiffs and Class Members the true character, quality, and nature of the Class

20  Vehicles. Mercedes actively concealed – and continues to conceal – the true

21  character, quality, and nature of the Class Vehicles and knowingly made

22  misrepresentations about the world-class quality, sophistication, state-of-the-art

23  safety, and comfort of the Class Vehicles. Plaintiffs and Class Members reasonably

24  relied upon Mercedes's knowing misrepresentations and active concealment of

25  these facts. Based on the foregoing, Mercedes is estopped from relying on any

26  statutes of limitation in defense of this action.

27

28

**Discovery Rule**

133.   The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles contained the HVAC System Defect.

134.   However, Plaintiffs and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the HVAC System Defect caused their vehicles to develop mold and emit foul, noxious odors. Even then, Plaintiffs and Class Members had no reason to know the foul moldy odors were caused by a defect in the Class Vehicles because of Mercedes's active concealment of the HVAC System Defect. Not only did Mercedes fail to notify Plaintiffs and Class Members about the HVAC System Defect, Mercedes in fact denied any knowledge of or responsibility for the HVAC System Defect when directly asked about it, and in many instances, actually blamed the customer for causing the odor problem. Thus Plaintiffs and Class Members were not reasonably able to discover the HVAC System Defect until after they had purchased or leased their Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the HVAC System Defect caused their Vehicles to harbor mold and emit foul, noxious odors.

**CLASS ACTION ALLEGATIONS**

135.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other Class Members similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

136.   Plaintiffs bring this class action, including all causes of action stated below, on behalf of themselves and all other similarly situated members of the proposed Class (referred to herein as "Class Members"), defined as follows:

All persons who purchased or leased a Class Vehicle

with the HVAC System in California. A "Class Vehicle"

is a vehicle of any of the following models/model years:

2004-2012 Mercedes A-Class,

2001-2017 Mercedes C-Class,

2000-2014 Mercedes CL-Class,

2013-2017 Mercedes CLA-Class,

2003-2009 Mercedes CLK-Class,

2004-2017 Mercedes CLS-Class,

2003-2016 Mercedes E-Class,

2007-2017 Mercedes GL-Class,

2010-2016 Mercedes GLK-Class,

2006-2016 Mercedes M-Class,

2017 Mercedes GLE-Class,

2006-2015 Mercedes R-Class,

1999-2017 Mercedes S-Class,

2003-2012 Mercedes SL-Class,

2004-2016 Mercedes SLK-Class, or

2002-2013 Maybach 57 and 62.

137.   Excluded from the proposed Class are: (1) Mercedes, any entity or division in which Mercedes has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, otherwise divided into subclasses, or modified in any other way.

**Numerosity**

138.   Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Mercedes's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

**Typicality**

139.   The claims of Plaintiffs are typical of the claims of Class Members in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, distributed, warranted, sold/leased, and serviced by Mercedes. Plaintiffs, like all Class Members, have been damaged by Mercedes's misconduct in that they purchased/leased a Vehicle they would not have purchased/leased, or would not have purchased/leased at the price paid, and incurred or will incur the cost of repairs relating to and caused by the HVAC System Defect. Furthermore, the factual bases of Mercedes's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

**Adequate Representation**

140.   Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective vehicles.

141.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of Class Members.

**Predominance of Common Issues**

142.   There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.   whether the HVAC System in the Class Vehicles is defective;

b.   whether Mercedes knew or should have known about the HVAC System Defect, and, if yes, how long Mercedes has known of the Defect;

c.   whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.   whether Mercedes had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

e.   whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

f.   whether Mercedes's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing or leasing Class Vehicles;

g.   whether Mercedes's misrepresentations and omissions about the true defective nature of the Class Vehicles were likely to mislead or deceive, and therefore fraudulent, within the meaning of California's Unfair Competition Law (UCL);

h.   whether Mercedes's misrepresentations and omissions about the true defective nature of the Class Vehicles were and are unfair within the meaning of the UCL;

i.   whether Mercedes represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have;

1            j.     whether Mercedes represented, through its words and conduct,

2 that the Class Vehicles were of a particular standard, quality, or grade when they

3 were of another;

4            k.     whether Mercedes advertised the Class Vehicles with the intent

5 not to sell/lease them as advertised;

6            l.     whether Mercedes's misrepresentations and omissions about the

7 true defective nature of the Class Vehicles were likely to create confusion or

8 misunderstanding;

9            m.     whether Mercedes's misrepresentations and omissions about the

10 true defective nature of the Class Vehicles were and are deceptive;

11            n.     whether the Class Vehicles were unfit for the ordinary purposes

12 for which they were used, in violation of the implied warranty of merchantability;

13            o.     whether Daimler is liable for the acts, omissions, and violations

14 described in this Complaint;

15            p.     whether MBUSA is liable for the acts, omissions, and violations

16 described in this Complaint;

17            q.     whether Plaintiffs and the other Class Members are entitled to a

18 declaratory judgment stating that the HVAC Systems in Class Vehicles are

19 defective and/or not merchantable;

20            r.     whether Plaintiffs and the other Class Members are entitled to

21 equitable relief, including, but not limited to, a preliminary and/or permanent

22 injunction;

23            s.     whether Mercedes should be declared financially responsible for

24 notifying all Class Members of the problems with the Class Vehicles and for the

25 costs and expenses of permanently remedying the HVAC System Defect in the

26 Class Vehicles; and

27

28

1        t.      whether Mercedes is obligated to inform Class Members of their

2   right to seek reimbursement for having paid to diagnose, repair, or replace the

3   defective HVAC Systems.

4                                    **Superiority**

5        143.   Plaintiffs and Class Members have all suffered and will continue

6   to suffer harm and damages as a result of Mercedes's unlawful and wrongful

7   conduct. A class action is superior to other available methods for the fair and

8   efficient adjudication of this controversy.

9        144.   Absent a class action, most Class Members would likely find the

10  cost of litigating their claims prohibitively high and would therefore have no

11  effective remedy at law. Because of the relatively small size of the individual Class

12  Members' claims (compared to the cost of litigation), it is likely that only a few

13  Class Members could afford to seek legal redress for Mercedes's misconduct.

14  Absent a class action, Class Members will continue to incur damages, and

15  Mercedes's misconduct will continue without remedy.

16       145.   Class treatment of common questions of law and fact would also

17  be a superior method to multiple individual actions or piecemeal litigation in that

18  class treatment will conserve the resources of the courts and the litigants, and will

19  promote consistency and efficiency of adjudication.

20

21                           **FIRST CAUSE OF ACTION**

22        (Violation of California's Consumer Legal Remedies Act ("CLRA"),
                        Cal. Civ. Code § 1750, *et seq*.)
23
          146.   Plaintiffs incorporate by reference each allegation set forth in
24
     the preceding paragraphs.
25
          147.   Plaintiffs bring this cause of action for themselves and on behalf
26
     of Class Members.
27

28

1343147.6                                - 41 -

1    148.   Mercedes is a "person" as defined by the CLRA. Cal. Civ. Code
2  § 1761(c).

3    149.   Plaintiffs and Class Members are "consumers" within the
4  meaning of the CLRA. Cal. Civ. Code § 1761(d).

5    150.   The purchases and leases of Class Vehicles and the warranties
6  by Plaintiffs and Class Members constitute "transactions" as defined by the CLRA.
7  Cal. Civ. Code § 1761(e).

8    151.   The Class Vehicles and the warranties constitute "goods" or
9  "services" as defined by the CLRA. Cal. Civ. Code §1761(a) and (b).

10    152.   Plaintiffs and Class Members purchased or leased the Class
11  Vehicles and the warranties primarily for personal, family, and household purposes
12  as meant by the CLRA. Cal. Civ. Code § 1761(d).

13    153.   Mercedes's misrepresentations, active concealment, failures to
14  disclose, and omissions regarding the Class Vehicles and the warranties violated the
15  CLRA in the following ways:

16    a.    Mercedes misrepresented that the Class Vehicles and the
17  warranties had characteristics, benefits, or uses that they did not have (Cal. Civ.
18  Code § 1770(a)(5));

19    b.    Mercedes misrepresented that the Class Vehicles and the
20  warranties were of a particular standard, quality, or grade when they were of
21  another (Cal. Civ. Code § 1770(a)(7));

22    c.    Mercedes advertised the Class Vehicles and the warranties with
23  an intent not to sell/lease them as advertised (Cal. Civ. Code § 1770(a)(9));

24    d.    Mercedes misrepresented that the Class Vehicles and the
25  warranties conferred or involved rights, remedies, or obligations that they did not
26  (Cal. Civ. Code § 1770(a)(14)); and

27

28

1         e.     Mercedes misrepresented that the Class Vehicles and the

2  warranties were supplied in accordance with previous representations when they

3  were not (Cal. Civ. Code § 1770(a)(16)).

4        154.  Mercedes's unfair and deceptive acts or practices occurred

5  repeatedly in Mercedes's course of trade or business, were material, were capable

6  of deceiving a substantial portion of the purchasing public, and as a result, caused

7  economic harm to purchasers and lessees of the Class Vehicles.

8        155.  Mercedes knew, by 2008 at the latest, and certainly before the

9  sale or lease of the Class Vehicles, that the Class Vehicles' HVAC Systems

10  suffered from an inherent defect, were defectively designed or manufactured, would

11  exhibit problems such as mold growth and the emission of foul and noxious odors,

12  and were not suitable for their intended use.

13        156.  By 2008 at the latest, Mercedes had exclusive knowledge of

14  material facts concerning the existence of the HVAC System Defect in its Class

15  Vehicles. Furthermore, Mercedes actively concealed the Defect from consumers by

16  denying the existence of the Defect to Class Members who contacted Mercedes

17  about the moldy smell, failing to cover temporary "fixes" under warranty, and

18  failing to offer Class Members a permanent solution to the HVAC System Defect.

19        157.  Mercedes was under a duty to Plaintiffs and Class Members to

20  disclose the defective nature of the HVAC Systems, as well as the associated costs

21  that would have to be repeatedly expended in order to temporarily address the

22  moldy smell caused by the HVAC System Defect, because:

23        a.     Mercedes was in a superior position to know the true state of

24  facts about the HVAC System Defect in the Class Vehicles;

25        b.     Plaintiffs and Class Members could not reasonably have been

26  expected to learn or discover that the Class Vehicles had the HVAC System Defect

27  until, at the earliest, the manifestation of the Defect; and

28

c.     Mercedes knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the HVAC System Defect prior to its manifestation.

158.    In failing to disclose the defective nature of the Class Vehicles, Mercedes knowingly and intentionally concealed material facts and breached its duty not to do so.

159.    The facts concealed or not disclosed by Mercedes to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the HVAC System Defect to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and other Class Members known that the Class Vehicles had the HVAC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for it.

160.    Plaintiffs and Class Members are reasonable consumers who did not expect their Class Vehicles to contain a defective HVAC System. It is a reasonable and objective consumer expectation for consumers to expect the HVAC System <u>not to</u> foster the growth of mold and mildew within the System or emit moldy and noxious odors through the HVAC System vents.

161.    As a result of Mercedes's misconduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles contain defective HVAC Systems and repeatedly manifest mold growth and emit foul smells due to the HVAC System Defect, causing inconvenience, creating an uncomfortable and unhealthy environment for vehicle occupants, and causing Class Members to spend money, even when the Vehicle was still under warranty, to repeatedly but temporarily address the recurring odors caused by the Defect.

162.   As a direct and proximate result of Mercedes's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages in that they have a Vehicle with a defective HVAC System and they have experienced and may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors, for which there is no permanent fix.

163.   Plaintiffs and the Class are entitled to equitable relief.

164.   Mercedes received proper notice of its alleged violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), via a letter sent to Mercedes and its registered service agent on August 17, 2015, on behalf of Plaintiff Manan Bhatt and all others similarly situated. Mercedes failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter. The notice letter is attached hereto as Exhibit C.

165.   Thus, pursuant to Cal. Civ. Code §§ 1780(a), 1780(e), and 1782(a), Plaintiffs seek, in addition to equitable relief, actual damages, restitution, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## SECOND CAUSE OF ACTION

(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*)

166.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

167.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

168.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Mercedes engaged in conduct that violated each of this statute's three prongs.

169.   Mercedes committed an *unlawful business act or practice* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., by systematically breaching its warranty obligations and by violating the CLRA and the Song-Beverly Consumer Warranty Act as alleged above and below.

170.   Mercedes committed *unfair business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., because the acts and practices described herein, including but not limited to Mercedes's failure to provide a permanent remedy to fix the HVAC System Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. Mercedes's acts and practices were additionally unfair because the harm to Plaintiffs and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further, Mercedes's acts and practices were unfair in that they were contrary to legislatively declared or public policy.

171.   Mercedes committed *fraudulent business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it concealed the existence and nature of the HVAC System Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles were "comfortable," "state of the art," and designed and manufactured to be the "most advanced vehicles on the road" when, in fact, they are not. Mercedes's representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Vehicles.

172.   Mercedes's unfair or deceptive acts or practices occurred repeatedly in the course of Mercedes's trade or business, and were likely to mislead a substantial portion of the purchasing public.

173.   Plaintiffs relied on Mercedes's material misrepresentations and nondisclosures, and would not have purchased/leased, or would have paid less for, the Class Vehicles had they known the truth.

174.    As a direct and proximate result of Mercedes's unfair, unlawful, and deceptive practices, Plaintiffs have lost money.

175.    Plaintiffs and Class Members seek an order enjoining Mercedes from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

## THIRD CAUSE OF ACTION

(Breach of Express Warranty Pursuant to Song-Beverly Consumer Warranty Act)

176.    The Class Vehicles are "consumer goods" under Cal. Civ. Code § 1791(a).

177.    Mercedes is and was at all relevant times a "manufacturer" and seller of the Class Vehicles under Cal. Civ. Code § 1791(j); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles under Cal. Civ. Code § 1791(i).

178.    Plaintiffs and Class Members bought or leased Class Vehicles designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Mercedes.

179.    Mercedes expressly warranted the Class Vehicles against defects including the HVAC System Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

180.    As described above, the HVAC System in the Class Vehicles is defective. The HVAC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class Members.

181.    Mercedes knew of the HVAC System Defect when it expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Vehicles had

1    the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class

2    Vehicles under false and/or fraudulent pretenses.

3          182.   Mercedes is obligated, under the terms of its express warranties

4    and pursuant to Cal. Civ. Code §§ 1793.2 and 1795.4, to repair and/or replace the

5    defective HVAC System at no cost to Plaintiffs and Class Members.

6          183.   Mercedes breached its express warranties by supplying the Class

7    Vehicles to Plaintiffs and Class Members with the HVAC System Defect.

8          184.   Mercedes breached its express warranties by failing to repair the

9    Class Vehicles under warranty and by failing to provide to Plaintiffs or Class

10   Members, as a warranty replacement, a product that conforms to the qualities and

11   characteristics that it promised when it sold the Class Vehicles to Plaintiffs and

12   Class Members.

13         185.   As more fully detailed above, Mercedes was provided with

14   appropriate notice and has been on notice of the Defect and of its breach of its

15   express written warranties from various sources, including Plaintiffs.

16         186.   Plaintiffs have given Mercedes a reasonable opportunity to cure

17   its failures with respect to its warranties, and Mercedes has failed to do so.

18         187.   Affording Mercedes any further opportunity to cure their breach

19   of written warranties is unnecessary and futile here.

20         188.   Any express warranties promising to repair and/or correct any

21   defects fail in their essential purposes because the contractual remedy is insufficient

22   to make Plaintiffs and Class Members whole and because Mercedes has failed

23   and/or has refused to adequately provide the promised remedies within a reasonable

24   time.

25         189.   Accordingly, recovery by the Class Members is not restricted to

26   any written warranties promising to repair and/or correct defects, and they seek all

27   remedies as allowed by law.

28

1    190.   Any attempt by Mercedes to limit or disclaim the express

2    warranties in a manner that would exclude coverage of the HVAC System Defect is

3    unenforceable and void pursuant to Cal. Civ. Code § 1790.1.

4    191.   As a direct and proximate result of Mercedes's breach of its

5    express warranties, Plaintiffs and Class Members received goods that have

6    substantially impaired value and have suffered damages in an amount to be

7    determined at trial.

8    192.   Pursuant to Cal. Civ. Code § 1794 and 1795.4, Plaintiffs and

9    Class Members are entitled to incidental, consequential, and other damages and

10    other legal and equitable relief, as well as costs and attorneys' fees.

11    **FOURTH CAUSE OF ACTION**

12    (Breach of Express Warranty)

13    193.   The Class Vehicles are and were at all relevant times "goods"

14    within the meaning of, *inter alia*, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

15    194.   Mercedes is and was at all relevant times a "merchant" with

16    respect to the Class Vehicles, under, *inter alia*, Cal. Com. Code §§ 2104(1) and

17    10103(c), and a "seller" of the Class Vehicles, under § 2103(1)(d); and, with

18    respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles,

19    under, *inter alia*, Cal. Com. Code § 10103(a)(16).

20    195.   Plaintiffs and Class Members are "buyers" or "lessees" within

21    the meaning of, *inter alia*, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

22    196.   Plaintiffs and Class Members bought or leased Class Vehicles

23    designed, manufactured, warranted, marketed to them, and intended to be

24    purchased or leased by consumers such as them, by Mercedes.

25    197.   Mercedes expressly warranted the Class Vehicles against

26    defects, including the HVAC System Defect, within the meaning of, *inter alia*, Cal.

27    Com. Code §§ 2313, 2316, 10210, and 10214.

28

1343147.6                          - 49 -

198.   As described above, the HVAC System in the Class Vehicles is defective.  The HVAC System Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class Members.

199.   Mercedes knew of the HVAC System Defect when it expressly warranted the Class Vehicles, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Vehicles had the Defect, and induced Plaintiffs and Class Members to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

200.   Mercedes is obligated, under the terms of its express warranties, to repair and/or replace the HVAC Systems for Plaintiffs and Class Members.

201.   Mercedes breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the HVAC System Defect.

202.   Mercedes breached its express warranties by failing to repair the Class Vehicles and by failing to provide to Plaintiffs or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Vehicles to Plaintiffs and Class Members.

203.   As more fully detailed above, Mercedes was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources, including Plaintiffs.

204.   Plaintiffs have given Mercedes a reasonable opportunity to cure its failures with respect to its warranties, and Mercedes has failed to do so.

205.   Affording Mercedes any further opportunity to cure their breach of written warranties is unnecessary and futile here.

206.   Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Class Members whole and because Mercedes has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

207.   Accordingly, recovery by the Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

208.   In its capacity as a warrantor, and by the conduct described herein, any attempt by Mercedes to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unconscionable as a matter of law because the relevant purchase/lease transactions were tainted by Mercedes's concealment of material facts. Thus any such effort by Mercedes to disclaim, or otherwise limit, its liability for the HVAC System Defect is null and void.

209.   As a direct and proximate result of Mercedes's breach of express warranties, Plaintiffs and Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

210.   Plaintiff and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

### FIFTH CAUSE OF ACTION
(Breach of Express Warranty – Magnuson-Moss Warranty Act)

211.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

212.   The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

213.   Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

214.   Mercedes is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

215.   Mercedes provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

216.   Mercedes has breached its express warranties by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including the HVAC System Defect.

217.   At the time Class Vehicles were sold or leased, Mercedes knew that they possessed the HVAC System Defect and offered an express warranty with no intention of honoring said warranty with respect to the known Defect.

218.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

219.   At no time has Mercedes offered a permanent or adequate repair or replacement of the HVAC System that would permanently prevent the moldy odor. Despite repeated demands by Plaintiffs and Class Members that Mercedes pay the costs and incidental expenses associated with temporarily "fixing" the HVAC System, Mercedes has refused to do so. Mercedes's refusal to provide a permanent repair or replacement for the HVAC System Defect and to pay for the temporary "fixes" violates 15 U.S.C. § 2304(d)(1).

220.   Mercedes was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

221.   Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives; nevertheless Mercedes had been notified, as alleged above.

222.   As a direct and proximate result of Mercedes's breach of its express written warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)

223.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

224.   Mercedes's Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

225.   Mercedes is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

226.   Plaintiffs and Class Members who purchased or leased their Class Vehicles within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

227.   Mercedes impliedly warranted to Plaintiffs and Class Members that its Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

228.   Mercedes impliedly warranted to Plaintiffs and Class Members that it would repair or replace any defective products, including the defective HVAC System that produces the moldy odor.

229.   The propensity of the HVAC System Defect to create a noxious and foul moldy odor renders the Class Vehicles to not be of the quality that a buyer or lessee would reasonably expect, and therefore not merchantable.

230.   The Class Vehicles do not conform to the promises or affirmations of fact made by Mercedes in its promotional materials and vehicle owner manuals in that the HVAC System Defect creates an environment in the Class Vehicles' cabin that is neither "comfortable" nor the product of "state-of-the-art engineering."

231.   In violation of Cal. Civ. Code § 1791.1(a), Mercedes breached its implied warranty by selling/leasing Class Vehicles that were defective and refusing to permanently replace and/or repair the defective HVAC Systems.

232.   The HVAC System Defect has deprived Plaintiffs and Class Members of the benefit of their bargain, and have caused the Class Vehicles to depreciate in value.

233.   Any attempt by Mercedes to limit or disclaim the express warranties in a manner that would exclude coverage of the HVAC System Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

234.   As a result of Mercedes's breach of its implied warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

## SEVENTH CAUSE OF ACTION

### (Breach of Implied Warranty)

235.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

236.   The Class Vehicles are and were at all relevant times "goods" within the meaning of, *inter alia*, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

237.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles, under, *inter alia*, Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of the Class Vehicles, under § 2103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles, under, *inter alia*, Cal. Com. Code § 10103(a)(16).

238.   Plaintiffs and Class Members are "buyers" or "lessees" within the meaning of, *inter alia*, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

239.   When it sold or leased its Class Vehicles, Mercedes extended an implied warranty to Class Members that the subject Vehicles were merchantable and fit for the ordinary purpose for which they were sold or leased, pursuant to Cal. Com. Code §§ 2314, 10212, and 10214.

240.   Plaintiff Blasco and other Class Members who purchased or leased a Class Vehicle directly from Mercedes are entitled to the benefit of their bargain: a Vehicle with a nondefective HVAC system that does not emit moldy air.

241.   Likewise, Plaintiff Bhatt and other Class Members who purchased or leased a Mercedes Certified Pre-Owned Class Vehicle are entitled to the benefit of their bargain: a vehicle with a nondefective HVAC system that does not emit moldy air.

242.   Class Members who purchased Certified Pre-Owned Class Vehicles are the intended ultimate consumers of the Class Vehicles, and therefore are third-party beneficiaries for the purposes of their implied warranty claims.

243.   Mercedes breached this implied warranty in that its Class Vehicles are (1) not fit for ordinary use, and (2) not of a merchantable quality.

244.   Had the HVAC System Defect that existed at the time of sale been known, the Class Vehicles could not have been sold or leased, or could not have been sold or leased at the same price.

245.   As a direct and proximate result of Mercedes's breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

(Breach of Implied Warranty – Magnuson-Moss Warranty Act)

246.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

247.   Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

248.   Defendant Mercedes is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

249.   The subject Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

250.   Mercedes extended an implied warranty to Plaintiffs and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Vehicles and its Class Vehicles' HVAC Systems.

251.   Mercedes breached this implied warranty by selling/leasing its Class Vehicles with defective HVAC Systems that were neither merchantable nor fit for their intended purpose.

252.   Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Class Representatives; nevertheless Mercedes was notified of its breach of warranty, as alleged above.

253.   As a direct and proximate result of Mercedes's breach of the implied warranty under the Magnuson-Moss Act, Plaintiffs, and the Class, have been damaged in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

(Fraud by Concealment)

254.   Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

255.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

256.   Mercedes concealed and suppressed material facts concerning the quality of the Class Vehicles, and the HVAC Systems in the Class Vehicles.

257.   Mercedes concealed and suppressed material facts concerning the serious Defect causing Class Vehicles to emit strong foul odors. Upon information and belief, the Defect lies in the evaporator and evaporator box deep within the dashboards of the Class Vehicles. Mercedes knew that Plaintiffs and

Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the Vehicles. Mercedes furthered and relied upon this lack of disclosure to promote payments for temporary "fixes" and in some cases accused Plaintiffs and Class Members of causing the problem themselves – all the while concealing the true nature of cause and Defect from Plaintiffs and Class Members. Mercedes further denied the very existence the Defect and the propensity of foul odors when Plaintiffs and Class Members complained of the Defect.

258. Mercedes concealed and suppressed material facts that point to the nature of the Defect being a faulty evaporator design, a $400 to $800 or more part requiring extensive labor and parts to replace and instead pushed temporary "fixes" like filter changes and cleanings.

259. Mercedes did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles, that the Class Vehicles were world class, comfortable, warranted, and reliable vehicles and concealed the information in order to prevent harm to Mercedes and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in their decisions to purchase or lease the Class Vehicles.

260. Mercedes had a duty to disclose the HVAC System Defect in the Class Vehicles because it was known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to or reasonably discoverable by Plaintiffs and Class Members. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual

quality, comfort, and usability. Even when faced with complaints regarding the Defect, Mercedes misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Vehicles once at the time of purchase or lease and again when the Defect was complained of to Mercedes. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased/leased, are material concerns to a consumer.

261.   Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid recalls that would hurt the brand's image and cost money, and it did so at the expense of Plaintiffs and Class Members.

262.   On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class Members and conceal material information regarding defects that exist in Mercedes vehicles.

263.   Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased cars designed and manufactured by Mercedes or chosen different models not known to emit foul odors. Plaintiffs and Class Members' actions were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

264.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class Members sustained damages because they negotiated and paid value for the Class Vehicles not considerate of the HVAC System Defect that Mercedes failed to disclose, and they paid for temporary repairs and parts to attempt to remedy the Defect. Had they been aware of the concealed Defect that

1    existed in the Class Vehicles, Plaintiffs and Class Members would have paid less

2    for their Vehicles or would not have purchased or leased them at all.

3         265.   Accordingly, Mercedes is liable to Plaintiffs and Class Members

4    for damages in an amount to be proven at trial.

5         266.   Mercedes's acts were done maliciously, oppressively,

6    deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and

7    Class Members' rights and well-being to enrich Mercedes. Mercedes's conduct

8    warrants an assessment of punitive damages in an amount sufficient to deter such

9    conduct in the future, which amount is to be determined according to proof.

10                        **TENTH CAUSE OF ACTION**

11                              (Unjust Enrichment)

12        267.   Plaintiffs incorporate by reference each allegation set forth in

13   the preceding paragraphs.

14        268.   Mercedes has been unjustly enriched by Plaintiffs and Class

15   Members purchasing/leasing Class Vehicles from Mercedes and purchasing

16   replacement parts and services from Mercedes that Plaintiffs and Class Members

17   would not have purchased/leased but for Mercedes's misconduct alleged above

18   with respect to the HVAC System Defect.

19        269.   Plaintiffs and Class Members unknowingly conferred a benefit

20   on Mercedes of which Mercedes had knowledge, since Mercedes was aware of the

21   defective nature of the Class Vehicles' HVAC Systems and the resultant moldy

22   odor problems, but failed to disclose this knowledge and misled Plaintiffs and Class

23   Members regarding the nature and quality of the Class Vehicles while profiting

24   from this deception.

25        270.   The circumstances are such that it would be inequitable,

26   unconscionable, and unjust to permit Mercedes to retain the benefit of profits that it

27   unfairly obtained from Plaintiffs and Class Members. These profits include the

28   premium price Plaintiffs and the Class paid for the Class Vehicles and the cost of

1   the parts and services bought from Mercedes to temporarily alleviate the moldy

2   odor emitted by the HVAC System.

3        271.   Plaintiffs and Class Members, having been damaged by

4   Mercedes's conduct, are entitled to recover or recoup damages as a result of the

5   unjust enrichment of Mercedes to their detriment.

6                              **RELIEF REQUESTED**

7        272.   Plaintiffs, on behalf of themselves, and all others similarly

8   situated, request the Court to enter judgment against Mercedes, as follows:

9        a.   an order certifying the proposed Class, designating Plaintiffs as

10  named representatives of the Class, and designating the undersigned as Class

11  Counsel;

12       b.   a declaration that the HVAC Systems in the Class Vehicles are

13  defective;

14       c.   a declaration that Mercedes is financially responsible for

15  notifying all Class Members about the defective nature of the Class Vehicles;

16       d.   an order enjoining Mercedes from further deceptive distribution,

17  sales, and lease practices with respect to the Class Vehicles, and to permanently

18  repair the Class Vehicles so that they no longer possess the HVAC System Defect;

19       e.   an award to Plaintiffs and Class Members of compensatory,

20  exemplary, and statutory damages, including interest, in an amount to be proven at

21  trial;

22       f.   a declaration that Mercedes must disgorge, for the benefit of

23  Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the

24  sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class

25  Members;

26       g.   an award of attorneys' fees and costs, under Cal. Code Civ.

27  Proc. § 1021.5, and as otherwise allowed by law;

28

1        h.     an award of pre-judgment and post-judgment interest, as

2 provided by law;

3        i.     leave to amend this Complaint to conform to the evidence

4 produced at trial; and

5        j.     such other relief as may be appropriate under the circumstances.

6                    **DEMAND FOR JURY TRIAL**

7     273.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs

8 demand a trial by jury of any and all issues in this action so triable of right.

9 Dated: July 14, 2017            Respectfully submitted,

10

11

12                    By: _____

13                          Jonathan D. Selbin

14                    LIEFF CABRASER HEIMANN &
                        BERNSTEIN, LLP

15                    Jonathan D. Selbin (State Bar No. 170222)
                    jselbin@lchb.com

16                    275 Battery Street, 29th Floor
                    San Francisco, CA 94111

17                    Telephone:  (415) 956-1000
                    Facsimile:   (415) 956-1008

18                    Annika K. Martin (admitted *pro hac vice*)
                    akmartin@lchb.com

19                    Abbye R. Klamann (State Bar No. 311112)
                    aklamann@lchb.com

20                    LIEFF CABRASER HEIMANN &
                    BERNSTEIN, LLP

21                    250 Hudson Street, 8th Floor
                    New York, NY 10013-1413

22                    Telephone:  (212) 355-9500
                    Facsimile:   (212) 355-9592

23

24                    Ketan A. Patel (admitted *pro hac vice*)
                    kp@personalinjury-ga.com

25                    CORPUS LAW PATEL, LLC
                    PO Box 1022

26                    Atlanta, Georgia 30290
                    Telephone:  (678) 597-8020

27                    Facsimile:   (678) 826-4700

28                    *Attorneys for Plaintiffs and the proposed Class*